GEORGE FOGG & others *vs.* SUPREME LODGE OF THE UNITED ORDER OF THE GOLDEN LION.

Suffolk.    March 27, 1893. — April 7, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & LATHROP, JJ.

*Endowment Order — Distribution of Assets by Receiver — Time at which Rights are fixed — Payment of Assessments — Lapsing of Rights — Payment of Sick Benefits — Assignment of Certificates — Unpaid Checks — Illegal Assessments — Duties of Certificate Holders — Power of Receiver to allow Proofs of Claims.*

Certificate holders in an endowment order organized under St. 1888, c. 429, the assets of which are in the hands of a receiver for distribution, are to take dividends from the particular fund on account of which their payments were made, in proportion to the amount paid into such fund by each; and money voluntarily paid as an initiation fee, though illegally exacted, will not receive a dividend from the reserve or benefit fund, if the money did not go into that fund.

The date of the filing of a bill in equity under which a receiver is appointed is, as a general rule, the date which fixes the rights of all parties.

An endowment order organized under St. 1888, c. 429, levied an assessment payable on a certain day, with a right of reinstatement thereafter. On the day of the expiration of the right of reinstatement, a bill in equity was filed, upon which afterward an injunction issued and a receiver was appointed. No suspended certificate holder attempted to obtain reinstatement on that day, nor did the officers of the order refuse to accept payments. *Held*, that the rights of such certificate holders lapsed.

An endowment order organized under St. 1888, c. 429, levied an assessment, the time for payment of which had not elapsed at the time of the filing of a bill in

equity for an injunction and for a receiver. *Held*, that no certificate holder need have paid the assessment, and that those paying assessments must be repaid in full, subject to the retention of such portion thereof as might be necessary to pay their proportionate share of the amount of the outstanding debts against the order.

An endowment order organized under St. 1888, c. 429, owing debts for expenses, levied an assessment for the purpose of paying the same. The time for payment of the assessment had not elapsed at the time of the filing of a bill in equity for an injunction and for a receiver. *Held*, that the assessment was valid, but that it should be enforced only to an amount sufficient to cover the debts of the order. *Held*, further, that those certificate holders who had paid the assessment in full should be repaid *pro rata*, and that the amount should be deducted from the dividends of those that did not pay.

Payments made to a certificate holder on account of sick benefits, during the solvency of an endowment order organized under St. 1888, c. 429, are to be deducted from the amount paid in by him, and the remainder proved against the assets. No interest is to be computed upon such sick benefits.

After the business of an endowment order organized under St. 1888, c. 429, has been stopped by injunction, and its assets are to be distributed, a certificate holder may assign his claims, subject to rights of set-off and other equities.

If the question whether the receiver of an endowment order organized under St. 1888, c. 429, should have special leave granted to bring an action against any one or more of the officers of the order, depends upon facts and circumstances not sufficiently presented in his report, it should be left to the determination of a single justice, upon special application made therefor.

Certificate holders in an endowment order organized under St. 1888, c. 429, who rely upon the illegality of an assessment as an excuse for non-payment, are bound promptly to notify the order of their objections, and, failing to do so, forfeit their rights.

Certain certificate holders in an endowment order organized under St. 1888, c. 429, received checks in payment of sick benefits, but failed to present them before the filing of a bill in equity for an injunction and a receiver. *Held*, that such checks should not be paid in full, and that they should be proved against the fund on account of which they were given.

After the expiration of the time fixed by the court for the proof of claims against an endowment order organized under St. 1888, c. 429, a receiver has no authority to admit proofs of claims. Application should be made to the court.

PETITION, by the receiver of the Supreme Lodge of the United Order of the Golden Lion, for instructions as to the disposition of the funds in his hands. This receiver, who was appointed after the decision reported in 156 Mass. 431, also filed his fourth report. The case was reported by *Lathrop*, J., and on certain questions, not determined by him on the facts then presented, by *Knowlton*, J., for the determination of the full court. The material facts appear in the opinion.

*G. S. Hale & H. N. Shepard*, for the receiver.

*G. W. Anderson*, for certain lapsed certificate holders.

*F. A. Pelton*, for assignees of George H. Ware and others, general creditors of the Order.

*E. A. Alger*, for Andrew H. Paton, a creditor.

*E. I. Baker*, for R. H. Allen and James N. Thompson, assignees of claims.

ALLEN, J.   The receiver is very properly anxious to make a distribution of the assets as soon as possible, and we also feel the importance of so doing in this and the other similar cases pending in this court, and therefore we have given our earliest attention to the questions presented.

1.  It is contended in behalf of certain certificate holders that the whole business prosecuted by the Order of the Golden Lion was illegal and *ultra vires*, and that therefore all moneys collected by it from its apparent members were paid without consideration, and might be recovered back in actions for money had and received.   It is therefore insisted that dividends shall be paid from all the moneys now on hand, including the reserve and benefit funds, so called, upon all sums so paid in, including sums which were paid for initiation fees and fines, and sums paid upon assessments for expenses.   But this consequence does not follow from the premises assumed.   By St. 1890, c. 341, § 1, amending St. 1888, c. 429, § 8, it is enacted that all the money derived from the first class of assessments therein provided for shall be divided into two funds, one of which shall be set aside as a reserve fund for the exclusive payment of matured endowment certificates, and the other is a benefit fund to be applied exclusively to the payment of disability benefits; and that no portion of the moneys so received shall be devoted to or used for any other purpose or carried to any other fund.   It is then provided that the corporation may make not exceeding three assessments per year to meet its reasonably necessary expenses.   The Order of the Golden Lion and all of its certificate holders were assumed to act under these statutory provisions, and all expected and understood that the moneys paid in would be applied accordingly.   Certain sums were paid in upon assessments of the first class, and certain other sums upon assessments for expenses, and have been used for expenses.   In now making distribution of the fund on hand derived from assessments of the first class, it is obviously

more just that the dividend to be paid to each holder of a certificate should be in proportion to the amount paid in by him to this fund. It is contended that it was illegal to exact five dollars as an initiation fee. Even if so, the money was nevertheless voluntarily paid, and it did not go into the reserve or benefit fund, and this must have been well understood by those who paid it, and there is no good reason why it should now receive a dividend therefrom.

2. The date of the filing of the bill is to be taken as the date which, as a general rule, fixes the rights of the parties. *Burdon* v. *Massachusetts Safety Fund Association*, 147 Mass. 360, 368, and cases there cited.

3. The third request for instructions relates to the rights of holders of certificates who had been suspended for non-payment of an assessment, but who at the time when the business of the order was stopped by legal proceedings were entitled to reinstatement by payment of the assessment and a fine within thirty days. The general laws governing Endowment Class, Law III. § 1, provided as follows: "Any member who fails to pay the assessment within thirty days from date of the call shall stand suspended. . . . Thirty days shall be allowed for reinstatement by the payment of a fine of one dollar." On an examination of the dates we do not find that there were any suspended holders of certificates who lost the right of reinstatement in consequence of the legal proceedings. Assessment No. 13 was laid September 19, 1891, and was payable October 19, and the right to reinstatement expired November 18. The bill in this case to restrain further proceedings by the Order was filed November 18, an order of notice was issued November 19, returnable November 20; service was accepted on behalf of the Order November 19, and service upon the officers was made the same day, and the Order appeared by its counsel November 20. The order for the injunction was passed December 15. A bill in equity was also filed in the Superior Court November 19, on which an injunction issued the same day, but the proceedings in that case were afterwards suspended, not having been instituted until after the bill in this case was filed. There was nothing to prevent the payment on November 18 of the sum required for the reinstatement of any holder of

a certificate who had failed to pay the thirteenth assessment. There has been no suggestion that any such suspended holder of a certificate actually sought on that day to obtain such reinstatement, and was cut off either through a misconception of his rights, in consequence of the filing of the bill, or through the refusal of the Order to receive the money. There is nothing to show that the Order, or any officer thereof, was even aware of the filing of the bill until November 19; much less, that it refused to receive payments on November 18 from suspended holders of certificates who sought reinstatement. It follows, that holders of certificates who failed to pay the thirteenth assessment seasonably, or to obtain reinstatement by November 18, are not entitled to prove claims ; and the same rule is applicable to all those who failed to pay any earlier assessment.

4. The fourteenth assessment, which was for expenses, was laid October 20, and was payable November 19, and the right to reinstatement would expire December 19. Legal proceedings having intervened before the last day of payment, and an injunction of the Superior Court being in force on that day, which we understand prevented the Order from collecting assessments, and the proceedings both in that court and in this court being matters of general notoriety before the right to reinstatement would expire, the holders of certificates who failed to make payment of this assessment seasonably, or to seek reinstatement after nonpayment, were in a measure excusable, and the right to prove claims should not be cut off by reason thereof. Those who paid the assessment seasonably should have their money refunded in full, in order to put them on the same footing with those who omitted to pay ; subject however to the retention of such portion thereof as may be necessary to pay their proportionate share of the amount of the outstanding debts against the Order, as hereinafter set forth. See paragraph 7, *post.*

5. The ruling was right, that payments made to a certificate holder on account of sick or disability claims are to be deducted from the money paid in by him, and the balance only is provable. This is obviously equitable. No computation of interest on sums paid for sick or disability benefits should be made.

6. While the business of the Order was carried on, the relation of holders of certificates to the Order was such that their rights under their certificates could not be assigned; and, by St. 1888, c. 429, § 15, the same were not subject to attachment, or to seizure on execution. But since the further prosecution of the business has been enjoined, and all that remains is to make distribution of the assets under the order of the court, the nature of the rights of holders of certificates has so far changed that their claims may be assigned, subject to rights of set-off and other equities against the original holders. *Briggs* v. *Earl*, 139 Mass. 473. *Dadmun Manuf. Co.* v. *Worcester Ins. Co.* 11 Met. 429, 435. *Wilson* v. *Hill*, 3 Met. 66, 69. May on Ins. § 386, and cases cited.

7. As has been stated already, the fourteenth assessment, which was for expenses, was laid October 20, and was payable November 19. Some of the holders of certificates had paid the same, when legal proceedings were instituted to enjoin the Order, and others might have done so before the expiration of the final time when such payment might have been made. The payments of this assessment were interrupted by the legal proceedings. The question now arises, what can be done for outstanding creditors, the general fund which was appropriated for expenses, and which is now in the receiver's hands, being insufficient to pay them in full. The payment of the fourteenth assessment by all the holders of certificates would have given more money than is needed. The injunction might have been modified so as to allow the Order, and to require the receiver, to proceed with the collection of this assessment, and perhaps this might be done even now. But a simple way of reaching the desired result is to treat the assessment as valid, but to enforce it only for such sum as will yield money enough to pay the outstanding debts. Those who have paid the assessment in full will have such sums deducted therefrom, and the balance refunded. Those who have not paid it will have such sum deducted from their dividends, where such dividends are sufficient for the purpose. This will give exact justice to all, or at least as close an approximation to it as can be made without undue expense and delay. And we do not now determine whether under other circumstances the general creditors would

be entitled to be paid from the reserve and benefit funds, or whether the court might properly order a new assessment to be laid. *Burdon* v. *Massachusetts Safety Fund Association*, 147 Mass. 360, 370.

8. The receiver already, by the original decree appointing him, has general power to prosecute and defend suits. In determining whether it is expedient to bring an action at the present time against an officer of the Order, it would be necessary to consider the probability of being able to maintain it, the solvency of the defendant, and the effect of such action in delaying the final winding up of the order. The question whether the receiver should have special leave granted to bring an action against any one or more of the officers of the Order depends upon facts and circumstances not sufficiently presented in his report, and should be left to the determination of a single justice, upon special application made therefor.

9. The further question is presented, whether holders of certificates have lost their rights to prove claims against the reserve and benefit funds in the hands of the receiver by failing to pay assessments which were illegal by reason of irregularities of the officers in laying the same or otherwise. The principal grounds of illegality which are suggested by counsel are two: 1st, that paid agents were employed to solicit or procure business and that by reason thereof, under the statute, no assessment could legally be laid and no business could legally be done; 2d, that assessments were laid in violation of the provision of statute that no assessment shall be made while there remains unexpended in the benefit fund an amount equal to one assessment. If holders of certificates intended to rely upon considerations like these to enable them to maintain their standing in the Order without paying the assessments, good faith towards the Order and towards other holders of certificates who were paying their assessments without objection required that a statement of the reasons for not paying the assessments should be promptly made. Otherwise all persons concerned would go on under the belief that no such ground of objection was to be urged. It is not suggested that any holder of a certificate ever placed his failure to pay an assessment on these grounds, or made it known to the Order that he should insist on his rights as a holder in good

standing in spite of his omission to pay the assessments. Therefore this ground of claim is not now open. Any other construction would lead to hopeless confusion and difficulty.

10. Holders of certificates who received checks in payment of sick or disability benefits or otherwise, and failed to collect them before the business of the Order was stopped, are not entitled now to have such checks paid in full, but they or the assignees thereof may prove the same against the money held by the receiver which was derived from the first class of assessments, and not against the general or expense fund. These claims, having been settled on just principles, so far as appears, while the Order was conducting its own business, and checks having been given therefor, stand on a different footing from unsettled claims for sick or disability benefits, and are properly provable, though not by way of preference.

11. The receiver is not authorized to admit and allow claims presented after the expiration of the time fixed by the court for the presentation of claims. If in any case there are such special circumstances as in his opinion make it just and reasonable that the proof of such claim should be allowed, and the same will not delay the distribution of the assets, special application may be made by him to a single justice setting forth such circumstances. In this case, a late period was fixed for the presentation of claims, and no extension of the time should be given without strong reason, since it is very desirable to have as early a distribution of the assets as possible.

*Ordered accordingly.*