LAND, J.
On January 21. 1909, a receiver was appointed to the Southern Insurance Company, and that corporation, its officers and employes, were enjoined from further proceeding with the conduct of the business of fire insurance, pursuant to the provisions of section 14 of Act No. 105 of 1898, p. 140.
In December, 1909, the Tyler Canning & Pickling Company, a policy holder, filed an intervention in the receivership proceeding, alleging a loss by fire on January 22, 1909, within 24 hours after the appointment of the receiver, and that by an adjustment of said loss the amount thereof was ascertained to be $490.45, for which the intervener prayed judgment against the receiver. The petition alleged that the said company had no knowledge or notice of the appointment of a receiver until some days after the destruction of the property by fire.
The receiver excexited to the petition on the ground that the allegations thereof disclosed no cause of action. This exception was sustained in the district court, and intervener thereupon appealed to the Court of Appeal. In that court there was judgment in favor of the intervener reversing the judgment below, and remanding the case for trial on the merits.
The case is now before the Supreme C.ourt on a writ of review.
[1] The sole question presented is whether the injunction against the company from further proceeding with its business and the appointment of a receiver to settle its affairs operated a cancellation of all of its outstanding policies at the date of the decree.
The Court of Appeal held that the Southern Insurance Company had forfeited its charter for insolvency, but that such for *565 feiture did not have the effect of canceling its outstanding policies.
The question is res nova in our jurisprudence, and there is some conflict of authority on the question in other jurisdictions.
Act No. 105 of 1898, p. 132, is a general law applicable to all insurance companies doing business in this state. Section 8 confers on the Secretary of State the authority to proceed against any insurance company as an insolvent corporation, when its capital stock is impaired to the extent of 25 per cent, thereof, or when the assets are insufficient to justify its continuance in business, if such impairment or deficiency shall not be made good within the time specified in his requisition. Section 14 makes it the duty of the Secretary of State in case of the failure of the board of directors to comply with such demand to apply to the court for an injunction “restraining the company, in whole or in part, from further proceeding-with its business.”
[2, 3] The same section empowers the court in its discretion, upon notice and hearing, to dissolve, modify, or perpetuate the injunction, and to appoint a receiver to take possession of the property and effects of the corporation, and to settle its affairs subject to such rules and orders as the court may, from time to time, prescribe.
On January 19, 1909, the board of directors, constituting a majority of the stockholders of the company, by resolution, acknowledged the insolvent condition of the corporation, and directed its agents to cease all business. On the next day the Secretary of State filed a petition praying for an injunction and the appointment of a receiver. On January 21, 1909, the company answered, admitting the fact of insolvency, and on the same day a judgment was rendered and signed enjoining the corporation, its officers and agents, “in whole and in part, from further proceeding with its business,” and appointing a receiver to take possession of its assets and to settle its affairs.
It is to be noted that sections 8 and 14 of the act of 1898 applies to all corporations, and makes no distinction between mutual and stock companies. It is evident that the same statute provides a mode for proceeding against insolvent insurance companies and for settling their affairs. The judgment in question was an adjudication in bankruptcy, and operated a dissolution of the corporation. 10 Cyc. 1297.
[4] In People v. Commercial Life Ins. Co., 154 N. Y. 95, 47 N. E. 908, where the assured died five days after the date of the decree of dissolution for insolvency, the court held that the claims of the beneficiaries must be fixed and determined on and as of date, when the proceedings for the dissolution of the corporation Were initiated and without regard to the death of the assured. The court adopted the reasoning in Dean & Sons’ Appeal, 98 Pa. 101, and cited Burdon v. Moss Safety Fund Ass’n, 147 Mass. 360, 17 N. E. 874, 1 L. R. A. 146; Fogg v. Supreme Lodge of United Order of Golden Lion, 159 Mass. 9, 33 N. E. 692; Commonwealth v. Am. Life Ins. Co., 162 Pa. 586, 29 Atl. 660, 42 Am. St. Rep. 844; Ingersoll v. Missouri Valley Life Ins. Co. (C. C.) 37 Fed. 530; N. Y. Life Ins. Co. v. Statham, 93 U. S. 24, 23 L. Ed. 789.
In the same case the court said:
“We are aware that the earlier cases in this court are not in complete accord with the views herein expressed (see People v. Security Life Ins. & Annuity Co., 78 N. Y. 114, 34 Am. Rep. 522, Atty. Gen. v. Guardian Mutual Life Ins. Co., 82 N. Y. 336, and Atty. Gen. v. Continental Life Ins. Co., 88 N. Y. 77); but, upon a careful review of the question, we have reached the conclusion that the later authorities should be followed.”
In the case of Dean & Sons, supra, the property insured was destroj'ed by fire after the date of the decree dissolving the company for insolvency, and the policy holder *567 claimed a dividend on the entire amount of the loss. The court of common pleas held that by virtue of the decree of dissolution the franchise of the company was annulled, and the company’s capacity to carry out contracts was destroyed, and the insured had only an equitable claim to be repaid out of the assets a ratable portion of unearned premium. On appeal the decree was affirmed by the Supreme Court of Pennsylvania, which after stating that, in ease of a voluntary assignment for the benefit of creditors, it was settled law that the rights of the parties are fixed as of the date of the assignment, continued as follows:
“We see no reason why the same principle shall not be applied in the case of an insolvent corporation which has been dissolved by the decree of the court. The corporation is dead for every purpose. But one duty remains, and that is to distribute its assets among its creditors. Even this the corporation is powerless to do, and the act of assembly devolves that duty upon a receiver to be appointed by the court. Who are the creditors entitled to participate in the distribution? Clearly those who were such at the time of the dissolution of the corporation. At that time the appellants were creditors to the extent of the premium they had paid. Beyond this, they had no claim upon their policy, for no loss had occurred. A possibility of loss in the future would not be a claim upon the assets, and, if it were, it would be common to all policy holders. The distribution of the assets was an immediate duty on the part of the receiver. Its delay is due merely to the fact that time is necessary to realize them. * * *
“And in the case of Commonwealth v. Massachusetts Insurance Company, 119 Mass. 51, it was said by the court: ‘The proceedings under the statute are in the nature of proceedings in insolvency, the object of which is to close up the affairs of the corporation as speedily as possible. The object would be defeated if the fund in the hands of the receiver is liable for future losses, for the fund could not be distributed until the longest policy had expired by lapse of time.’
“While this was said of a mutual company, the reasoning applies equally to the case in hand. The object of this proceeding is a prompt ■distribution of the assets. The principle contended for by the appellants would, if successful, make this impossible or at least intolerably inconvenient. If the rights of creditors are not fixed as of the date of the dissolution, when do they become fixed? If we take the distribution as the period, then the appellants would obtain an advantage over other policy holders who might sustain a loss the day after. The former would be paid, while the latter would get nothing. Such a rule could not be enforced without producing injustice, and we would be driven to delay distribution until all the policies had expired.”
It is set forth in the statement of the case that the receiver sent notice to all policy holders that the company had been dissolved, and notified them to send in their policies for the purpose of canceling and calculating the amount of the return premium that may be. This fact, however, had no bearing on the decision of the cause. If the policy was canceled as of date of the decree of dissolution, no subsequent notice from the receiver could reinstate it.
The doctrine of Dean & Son, supra, has been followed in a number of cases, among others in Todd v. German American Ins. Co., 2 Ga. App. 789, 59 S. E. 94, decided by the Georgia Court of Appeals in 1907. In that case the court said:
“The Traders’ Insurance Company became bankrupt, and therefrom followed the legal result that the two $2,000 policies which Turpin had written for him in that company were ipso facto canceled. See 4 Joyce, Ins. 3591; Boston R. Co. v. Mercantile Trust Co., 82 Md. 535, 34 Atl. 778, 38 L. R. A. 97; Doane v. Millville Ins. Co., 43 N. J. Eq. 522, 11 Atl. 739.”
Mr. Roger W. Cooley has formulated the same doctrine as follows:
“It is well settled that an adjudication of insolvency,. or the appointment of a receiver for an insolvent company, operates as a cancellation of all outstanding policies.”
See 3 Briefs on the Daw of Insurance, p. 2810.
The earlier decisions to the contrary are few in number, and of them the New York cases have been expressly overruled. See 154 N. Y. 95, 47 N. E. 968, supra.
The proposition that a bankrupt insurance corporation may go on earning premiums and incurring losses does not commend itself to our judgment, either from a legal or practical standpoint, and in this jurisdiction is repelled by both the letter and *569 spirit of Act 105 of 1898. Under that statute any company whose capital stock is impaired to the extent of 25 per cent, or whose assets are insufficient to justify its continuance in business is “deemed insolvent,” and may be proceeded against by the Secretary of State as “an insolvent corporation.”
Upon application by the Secretary .of State to the proper court, the judge is' authorized, upon notice and hearing, to issue a decree perpetually enjoining the corpora tion “from further proceeding with its business.” Such a decree necessarily brings the current business of the company to an immediate standstill, and destroys the corporate capacity to do or perform any act that would change the situation as it existed at the date of the decree.
Act 105 of 1898 is read into all policies of insurance issued or operative in the state of Louisiana, and every policy holder is charged with notice that his policy may be canceled by operation of law in case of the insolvency of the insurance company.
It is therefore ordered that the judgment of the Court of Appeal be reversed, and that the judgment of the district court be affirmed, costs in both appellate courts to be paid by the intervener and opponent.