ELLIS, Judge.
This is a suit by the plaintiff Joseph H. Page, doing ’business in the name of the Page Insurance Agency, in which he alleged that he operates a general insurance agency in the city of Houma, Louisiana, and that he sold and delivered to the defendant various and sundry insurance policies which are fully described in the petition. Plaintiff further alleged, and it is admitted by the defendant, that he sold defendant a total of seven policies, five of which were taken with the Keystone Mutual Casualty Company and the other two were cancelled and credit given for the unearned premiums. He alleged that the total amount of the premiums was the sum of $1442.29 of which amount the defendant had paid $332.15, leaving a balance due on the account of $1054.14.
Defendant filed an exception of no cause or right of action and the plaintiff amended the petition in which he alleged that at the special instance and request of the defendant he allowed the defendant credit “but that defendant knew that petitioner would have to and did' pay the various insurance companies for the policies purchased by defendant and that petitioner did actually pay for all of said policies.”
The defendant answered and admitted the purchase of the policies described in the original petition but further alleged that the five policies of insurance with the Keystone Casualty Company were can-celled and rendered useless on June 26, 1947 by virtue of the fact that this company, domiciled in Pittsburgh, Pennsylvania, was dissolved on that date by an order and decree of the Court of Common Pleas of Dauphin County, Pennsylvania, and that the Insurance Commissioner of the Commonwealth of Pennsylvania was directed to take possession of the property of the company and to liquidate its business and affairs. Defendant further in its answer set forth that the plaintiff was not entitled to claim the full premium for the said policies but must credit the defendant with the return premiums due on the date the policies became ineffective and can-celled due to the failure of the company as of June 26, 1947. The District Court rendered judgment in favor of the plaintiff as prayed for and from this judgment the defendant has now appealed. The exception of no cause or right of action is not being urged on appeal as the supplemental petition cured the deficiency in the original petition.
The evidence discloses that the defendant owned a fleet of taxi cabs and the plaintiff solicited his public liability insurance business and, as the defendant was unable to pay the premiums, it resulted in the plaintiff paying the full premiums for one year with defendant’s consent. The defendant agreed to repay plaintiff in quarterly installments and did pay on the indebtedness $332.15 which the manager of the plaintiff company stated was the first installment and the only one paid by the defendant. The plaintiff has proven by documentary evidence as well as the testimony of the manager of the business that it paid the premiums as alleged.
Counsel for plaintiff, in his 'brief, stated that there is no proof made that the Keystone Mutual Casualty Company was dissolved and no proof is made that the Keystone Mutual Casualty Company could not and is not able to meet its due obligations. He himself introduced a notice from the Special Deputy Insurance Commissioner of the Commonwealth of Pennsylvania to the Page Insurance Agency dated August 18, 1947, and on the letterhead it states: “Liquidation Division, Insurance Department, Commonwealth of Pennsylvania, 327 Fifth Avenue, Pittsburgh, Pennsylvania. In the Liquidation of the Dissolved Keystone Mutual Casualty .Company,” notifying the plaintiff of the ap *365 pointment of an ancillary receiver for this insurance company and in which it states that the company is dissolved. Also introduced by the plaintiff is a letter to the Page Insurance Agency from the receiver appointed in Louisiana. This letter is dated August 1st, 1947 in which it states that the insurance company in question “was dissolved by an order ‘and decree of the Court of Common Pleas of Dauphin County, Pennsylvania, as of June 26, 1947.” Counsel for plaintiff was, therefore, in error.
The effect of the decree of dissolution of the Keystone Mutual Casualty Company on June 26, 1947, coupled with the appointment of a receiver was the cancellation or termination of all outstanding policies by operation of law. 44 C.J.S., Insurance, § 129, page 698.
In American Jurisprudence, Vol. 29, page 100, Section 71, the effect of such a decree is stated as follows:
“While there are some contrary decisions, the general rule appears to be well established that on the adjudication of insolvency of an insurance company or upon the entry of a decree of dissolution upon a ground other than insolvency, the outstanding policies of the company are automatically cancelled * *
In Louisiana, the general rule is recognized. In Michel, Secretary of State, v. Southern Ins. Co., (Tyler Canning & Pickling Co., Intervenor) In re Whitney Central Trust & Savings Bank, 128 La. 562, 54 So. 1010, Ann.Cas.1912C, 810 the Court said:
“The sole question presented is whether the injunction against the company from further proceeding with its business 'and the appointment of a receiver to settle its affairs operated a cancellation of all of its outstanding policies at the date of the decree.”
* * * * * *
“The proposition that a bankrupt insurance corporation may go on earning premiums and incurring losses does not commend itself to our judgment, either from a legal or practical standpoint, and in this jurisdiction is repelled by both the letter and spirit of Act 105 of 1898. Under that statute any company whose capital stock is impaired to the extent of 25 per cent, or whose assets are insufficient to justify its continuance in business is 'deemed insolvent,’ and may be proceeded against by the Secretary of State as 'an insolvent corporation.’
“Upon application by the Secretary of State to the proper court, the judge is authorized, upon notice ‘and hearing, to issue a decree perpetually enjoining the corporation ‘from further proceeding with its business.’ Such a decree necessarily brings the current business of the company to an immediate standstill, and destroys the corporate capacity to do or perform any act that would change the situation as it existed at the date of the decree.
“Act 105 of 1898 is read into all policies of insurance issued or operative in the state of Louisiana, and every policy holder is charged with notice that his policy may be canceled by operation of law in Case of the insolvency of the insurance company.”
In Federico Macaroni Mfg. Co. v. Great Western Fire Ins. Co. et al., 173 La. 905, 139 So. 1, 2, 79 A.L.R. 1256, the Court recognized the general rule and stated it as follows:
“The rule is stated in 32 C.J. pp. 339, 340, §§ 102, 103, as f'ar as is applicable here, thus:
‘While there is authority to the contrary, the generally recognized rule is that a decree of dissolution or an adjudication of insolvency, coupled with the appointment of a receiver, cancels or terminates outstanding policies by operation of law, and subsequent losses under such policies are not liabilities which may be enforced against the receiver. * * * Holders of policies on which premiums have been paid for a term extending beyond the insolvency or dissolution of the company have valid claims for unearned premiums, and this is so even though there is no provision in the policy for refunding premiums paid.’
“The rule is stated in 14 R.C.L. 853, § 20, substantially the same, viz.:
‘While there are some contrary decisions, the weight of authority supports the prop *366 osition that, on the judicial adjudication of the insolvency of a stock insurance company and the appointment of a receiver, the outstanding policies of the company are ipso facto canceled, and that a claim for a loss thereafter occurring is not a provable claim against the company. The policy holders are creditors for the value of their policies at the time of the breach thus occurring, which in most cases is the pro rata return premium,’ etc.
“The doctrine stated was recognized by this court in Michel, Secretary of State, v. Southern Insurance Co., 128 La. 562, 54 So. 1010 [Ann.Cas.1912C, 810] and by the courts of other states in the following cases, cited in appellant’s brief, viz.: Moren v. Ohio Valley Fire & Marine Insurance Company’s Receiver, by the Court of Appeals of Kentucky, 224 Ky. 643, 6 S.W.2d 1091; Doane v. Millville Mutual Marine & Fire Insurance Co., by the Court of Chancery of New Jersey, 43 N.J.Eq. 522, 11 A. 739; People v. Commercial Alliance Life Insurance Co., 154 N.Y. 95, 47 N.E. 968; In re Equitable Reserved Fund Life Association, 131 N.Y. 354, 30 N.E. 114; People ex rel. Attorney General v. Life & Reserve Association, 150 N.Y. 94, 45 N.E. 8; Commonwealth ex rel. [Kirkpatrick] Attorney General v. American Life Insurance Company, by the Supreme Court of Pennsylvania, 162 Pa. 586, 29 A. 660 [42 Am.St. Rep. 844]; People v. Metropolitan Surety Co., 205 N.Y. 135, 98 N.E. 412, Ann.Cas. 1913D, 1180; Fogg v. Supreme Lodge of United Order of Golden Lion, 159 Mass. 9, 33 N.E. 692; Burdon v. Massachusetts Safety Fund Association, 147 Mass. 360, 17 N.E. 874, 1 L.R.A. 146; Boston & A. R. Co. v. Mercantile Trust & Deposit Co., by the Court of Appeals of Maryland, 82 Md. 535, 34 A. 778; Todd v. German-American Insurance Co., 2 Ga.App. 789, 59 S.E. 94; Fuller v. Wright, Insurance Commissioner, 147 Ga. 70, 92 S.E. 873, L.R.A.1917E, 1139; Johnson v. Button, Insurance Commissioner, 120 Va. 339, 91 S.E. 151; Lucas v. Pittsburgh Life & Trust Co., by the Supreme Court of Appeals of Virginia, 137 Va. 255, 119 S.E. 109; State ex rel, Gibson v. American Bonding Co., by the Supreme Court of Iowa, 206 Iowa 988, 221 N.W. 585.”
The Court then held that the general rule was not applicable and in departing from the general rule held:
“ * * * that the general rule that a judicial decree appointing a receiver or liquidator for an insolvent insurance company terminates the outstanding insurance policies is not applicable to a case where the court that rendered the decree had not jurisdiction over the person of the policyholder, and especially where the latter had no notice of the decree, and hence no opportunity to protect himself by obtaining other insurance.* * * ”
In the case at bar, it is conclusively shown that the manager of the plaintiff's business on the 26th day of June, 1947, the same da}' of the decree of dissolution, went to the defendant and told “him that it would be necessary for him to obtain other insurance as he had received notice that the Keystone Mutual Casualty Company was to be or had been dissolved. The record does not show when plaintiff received this notice, but it must have been prior to or possibly on the same day as the decree of dissolution for it was on that day that the defendant surrendered his policies to the plaintiff who in turn mailed them to the Commonwealth of .Pennsylvania, as he did all other policies in this company which he -had sold. Thus, the facts in the present case can easily be distinguished from those in the Federico case, supra.
Again, in the case of Dolhonde v. Tangipahoa Bank & Trust Company, La.Sup., 153 So. 71, 73, the Court stated:
“ * * * The facts herein show, however, that the asserts were placed in the hands of the liquidators for administration and settlement. In the case where a receiver is appointed, the doctrine is, if we remember correctly, that the, obligations which are incurred by the defunct corporation under its contracts are by authority of the state canceled and annulled.
The Dolhonde case, supra, was cited with approval by the Supreme Court in *367 Williams v. De Sota Bank and Trust Company, 189 La. 245, 179 So. 303, 305, as follows:
“In the case of Dolhonde v. Tangipahoa Bank & Trust Co., La.App. 1st Circuit, 153 So. 71, it was held that where a bank is closed by the banking commissioner under the provisions of Act No. 300 of 1910, and its assets sold, that this was a complete dissolution of the bank and its legal existence was ended. See, also, First National Bank of Selma v. Colby, 21 Wall. [609] 640, 22 L.Ed. 687, 689; Thomas v. Marine Bank & Trust Co., 156 La. 941, 946, 101 So. 315; People’s Bank & Trust Co. v. Louisiana State Rice Milling Co., 10 La.App. 401, 119 So. 779; Michel v. Southern Insurance Co., 128 La. 562, 54 So. 1010, Ann.Cas.1912C, 810; Levy v. Union Indemnity Co., La.App., Orleans, 146 So. 182.”
This court, with Judge Ott as its organ, in Tangipahoa Bank and Trust Company v. Guwang (Same v. Arthur et al.), 15 So.2d 148, stated:
“Professor McMahon, in his treatise on Louisiana Practice, Vol. 1, page 161-163, under the heading of ‘Parties Plaintiff’ states that in the liquidation of certain types of corporations under special statutes such as banks, insurance companies, homestead associations, etc., the receiver or liquidator is the proper party to bring suit in his official capacity for the reason that the insolvency of such a corporation and the placing of it in the hands of a receiver or liquidator has the effect of dissolving the corporation and forfeiting its charter. He cites in support of this conclusion the cases of Michel v. Southern Ins. Co., 128 La. 562, 54 So. 1010, Ann.Cas.1912C, 810, and Levy v. Union Indemnity Co., La.App., 146 So. 182, where it was held that the appointment of a receiver for an insolvent insurance company had the effect of terminating its corporate existence.”
Also, see Owens et al v. Allied Underwriters, Supreme Court of Louisiana, 207 La. 437, 21 So.2d 490, which cites with approval the cases above cited and follows .the general rule .as laid down in those cases, and also distinguishes the Federico case, supra.
Although the insurance policies were cancelled by operation of law on June 26, 1947, there is also no doubt from the evidence that they were cancelled on that date by mutual consent. It is shown that plaintiff requested and obtained the policies from the defendant and told him that it would be necessary to protect himself with other insurance, mailed the originals to Pennsylvania, and stamped the agent’s office copies, which were introduced in evidence, “Cancelled June 26, 1947” with blanks for days in force and the earned and unearned premiums so much. There can be no question but that the policies were cancelled as of June 26th 1947 by operation of law as well as 'by mutual consent.
Where an insured is the holder of policies on which premiums have been paid for a term extending beyond the insolvency or dissolution of the company, he has a valid claim against the insurance company for the unearned premiums on the pro rata basis, and it is equally true that if the premiums were unpaid at the time of insolvency or dissolution of the company, such policyholders are liable to the receiver or liquidator for so much thereof as has been earned, but they are not liable for the unearned residue, that is, premiums for the unexpired term of insurance. 44 C.J.S., Insurance, § 129c, page 699. This is the contention of counsel for defendant and he would be correct if the plaintiff was the insurance company, but in the present case the facts are clear that the plaintiff loaned to or advanced on behalf of the defendant $1442.29 which was paid to Keystone Mutual Casualty Company to cover premiums for one year on the public liability insurance policies belonging to defendant.
Under the facts in this case, the defendant alone could claim the unearned premiums from the company and is entitled to same from the company. The Keystone Mutual Casualty Company is liable to the defendant for the unearned premiums, and it is equally true that the *368 plaintiff is not, under the facts or law, responsible for these unearned premiums. Call the obligation sued upon herein a loan, an advance on ’behalf of the defendant, or a straight out payment of premiums for the defendant by the plaintiff, it still would be a personal account due 'by the defendant to the plaintiff, and under the facts in this case and the law, the plaintiff is entitled to recover. This case is nothing more nor less than a suit on a personal account for money loaned or, at least, a suit by an insurance agent for premiums advanced or paid on behalf of an insured for which he is entitled under the law to personally sue for and recover, regardless of the insolvency or dissolution of the company or cancellation of the policies. Defendant cannot offset unearned premiums against this debt, neither is the plaintiff given the right under the law nor is any authority shown under the facts in this case for plaintiff to collect the unearned premiums from the insurance company in order to satisfy the defendant’s obligation. The question of the collection and payment of unearned premiums is one strictly between the insured, defendant 'herein, and the insurer, Keystone Mutual Casualty Company.
In the case of Janvier & Company v. Fritz, La.App., 180 So. 172, 173, in which there was an exception of no cause or right of action filed, based upon the contention "that an agent for an insurance company cannot maintain an action in its own name for a premium due its principal.” The Court in considering the question statfid:
“Considering the exception in that light, we find that the pertinent allegations of the petition are to the effect that the plaintiff is a general insurance agency and, as such, sold and delivered certain policies to defendants. There is nothing in the record which qualified or enlarged upon this statement in the petition — no allegation and no proof that plaintiff had paid its principal, which is shown to be the Travelers Insurance Company, the amount of the premiums sued for or that it is in any way responsible for their payment.
"In Corpus Juris, Vol. 33, p. 67, we find the following:
‘Ordinarily an insurance agent has no right to sue for the premium due on a policy negotiated 'by him, even where he is authorized to collect the premium. However, if a note for a premium is payable to him, individually, he may maintain an action thereon; and, if the agent negotiating the insurance pays the premiums, 'he is entitled to recover the amount thereof from insured. Under some circumstances the agent may so recover, even though he has not actually paid the premium to the company. An action to recover a premium may in a proper case be brought by an agent in the name of the company to the agent’s use. Ordinarily an agent cannot sue in his own name to recover a premium, unless he is entitled thereto by way of assigment or subrogation. However, he may sue in his own name where the company holds him liable for premiums and he has paid the one in question.’
“In the case of Weisman Insurance Agency v. Bass, 14 La.App. 207, 127 So. 635, decided by our brethren of the Court of Appeal for the Second Circuit, it was held that an agent for a number of insurance companies could maintain an action in its own name for premiums due its principal without alleging a subrogation, where it was alleged that ‘the amount of said premiums were charged against it by the insurance companies and that it 'had paid the said amounts to the insurance companies.’
“In Barry & Brewer v. Wright, 168 Miss. 216, 150 So. 186, the Supreme Court of Mississippi, citing the Weisman Insurance Case, held that:
‘Where insurance company looks to agent for premiums and agent pays premium which insured fails to pay, agent is sub-rogated to all rights and remedies of company respecting premium and may demand and sue for it in his own name.’ (Syllabus by the Court.)
“In the case at bar there is no showing by way of allegation or proof of any fact *369 which would take this case out of the general rule that an agent cannot maintain a suit in its own name or an insurance premium due its principal.”
The plaintiff herein was entitled to sue in his own name and recover the amount sued for from the defendant, as he has definitely proven that he actually paid this amount as premiums to the Keystone Company for and on behalf of the defendant and by agreement with the defendant. In support of defendant’s contention that the policies were cancelled as of June 26, 1947 and that on August 1, 1947 plaintiff himself must have thought that the defendant only owed him personally $374.00, defendant has offered in evidence a bill rendered by the nlaintiff to the defendant on August 1st, 1947 which states: “Balance due on policies canceled June 26, 1947 — $374.00.” While it might be true that the plaintiff was of the opinion that he could collect the balance of the earned premiums from the defendant and then collect the unearned premiums from the insurance company, there is no positive proof of this in the record. However, under the most favorable effect that might be given to this document, the bill in question could not be considered as estopping the plaintiff from exercising the rights accorded him by law.
Counsel for defendant argues that: “To permit the agent to collect an unearned premium, where he has cancelled the policy, would be giving him the right to sell an insurance policy, pay the premium himself, then cancel the entire insurance and still collect the entire premium from the entire .premium from the insured, who would be in the position of having no insurance and yet responsible for the entire premium.” There is nothing in the record to show that the agent has collected or been permitted to collect any unearned premium, nor is it shown that the agent cancelled the policies, rather, they were cancelled by operation of law and by mutual consent. The record is devoid of any proof as to the final condition of the Keystone Company other than it was dissolved and a receiver appointed. There is no mention made in the record of either party to this suit having called upon the Keystone Company for any unearned premiums nor that any 'have ever been paid. The collection and payment of any unearned premiums under the facts in this case is strictly a matter 'between the defendant and the insurance company, Keystone Mutual Casualty Company.
It is, therefore, ordered that the judgment of the District Court be affirmed.
ROBERT D. JONES, Judge, sitting ad hoc.