371 So.2d 1261 (1979)
Lee M. SCARBOROUGH d/b/a Lee M. Scarborough and Company, Plaintiff-Appellant,
v.
Ronnie NELSON d/b/a Nelson Insurance Agency, Defendant-Appellee.
No. 6973.
Court of Appeal of Louisiana, Third Circuit.
May 23, 1979.
*1262 L. Donald Foreman, Lake Charles, for plaintiff-appellant.
John P. Navarre, Oakdale, for defendant-appellee.
Before CULPEPPER, DOMENGEAUX and GUIDRY, JJ.
*1263 GUIDRY, Judge.
Plaintiff, a licensed surplus line insurance broker, seeks judgment against defendant, a licensed insurance agent, for the premiums paid by plaintiff, on behalf of defendant, for certain policies of surplus line insurance procured and placed pursuant to instructions from defendant. Plaintiff additionally seeks recovery of attorney's fees pursuant to the provisions of LSA-R.S. 9:2781.
In his petition, which is styled "Petition on Open Account", plaintiff alleged that in the regular course of his business, he did broker certain insurance on behalf of defendant, and that there remained due to him the sum of $6020.97. Plaintiff also alleged that written demand had been made upon defendant, pursuant to the provisions of LSA-R.S. 9:2781, without avail and that he is thus entitled to reasonable attorney's fees. In answer to plaintiff's petition defendant filed a general denial.
At trial plaintiff admitted that, by reason of the cancellation of certain policies for non-payment of premiums, defendant was entitled to certain credits which reduced the amount due plaintiff to the sum of $4834.19. Additionally, on trial of this matter defendant admitted owing plaintiff the sum of $3009.45 which amount was placed in the registry of court and subsequently withdrawn by plaintiff, with the defendant and trial judge's acquiescence, subject to a reservation by plaintiff of his right to claim attorney's fees and the difference between the sum of $3009.45 and $4834.19.
Although the record is somewhat sketchy we glean therefrom the following facts. Plaintiff is licensed in the State of Louisiana as a surplus line broker. Defendant is a Louisiana licensed insurance agent. Plaintiff accepted and placed surplus line business for defendant during the period beginning November 1976 and ending February 1977. During the aforesaid period defendant requested and received from plaintiff 10 policies of insurance for his clients, seven of which were written by National Security Fire and Casualty Company; one of which was written by Mid-Continent Underwriters Inc.; and, two of which were written by All Star Insurance Corporation. One of the All Star Insurance Corporation policies was issued to the Allen Parish Police Jury on November 3, 1976 and the other was issued to the Oberlin Gas System on December 9, 1976. Within forty-five (45) days of the issuance of each of the aforesaid policies plaintiff paid the issuing companies the entire premium due thereunder. As each policy was forwarded to defendant for delivery to his client plaintiff enclosed a statement billing the defendant for the total net premium due. Although defendant was paid the premiums due under all of the aforesaid policies by his clients, he did not prior to trial pay plaintiff any of the premiums due under any of the policies. The amount tendered by defendant to plaintiff at trial, i.e., $3009.45, represents the total sum due plaintiff under all surplus line policies procured for defendant except the two All Star policies. The All Star Insurance Corporation was placed in liquidation on March 1, 1977, and the policies, the premiums for which are in dispute, were cancelled at that time. The named insureds received direct notice of cancellation along with information concerning the procedure to be followed in making a claim against the receiver for the premiums unearned under the cancelled policies. When the All Star policies were cancelled defendant replaced both policies with insurance secured from another company, allowing the Allen Parish Police Jury and the Oberlin Gas System as a credit on the cost thereof the premium unearned under the All Star policies. On May 18, 1977 plaintiff sent a letter by certified mail to defendant, with accompany invoices, requesting payment of a balance of $6021.87. This letter was received by defendant on May 19, 1977.
At trial plaintiff contended that he is entitled to the total net premium due under both All Star policies, irrespective of the later cancellation because of All Star's insolvency and liquidation, since he paid All Star in full for these policies and defendant was in turn paid in full by his clients. Additionally, plaintiff contended that he is *1264 entitled to attorney's fees under R.S. 9:2781. Defendant contended otherwise. As noted by the trial judge in his written reasons for judgment the instant suit presents two issues: (1) whether defendant is entitled to claim as a credit against the amount owing to plaintiff the premiums unearned under the All Star policies, i.e., the premiums paid for the policy term extending beyond the insolvency and liquidation of that company; and, (2) whether plaintiff is entitled to attorney's fees under R.S. 9:2781. The trial court decided both issues favorable to defendant and plaintiff has appealed. We will discuss these issues in the order set forth above.
IS DEFENDANT ENTITLED TO CLAIM AS A CREDIT AGAINST THE AMOUNT OWING TO PLAINTIFF THE PREMIUMS UNEARNED UNDER THE ALL STAR POLICIES?
In deciding this issue favorable to defendant the trial court reasoned as follows:

"The problem was caused when All Star Insurance Company was placed into liquidation and the insurance policies of Oberlin Gas System and Allen Parish Police Jury were cancelled. Nelson, as local agent, had to replace the policies with others which he paid and now claims credit. Lee M. Scarborough as general agent for All Star Insurance Company contends that he is owed the entire sum for which he billed Nelson when he placed the risk with All Star Insurance Company. Apparently either Nelson or Scarborough will lose $1,743.74 because it is obvious that neither All Star Insurance Company nor the insured will pay the sum. Under these circumstances, this Court feels that the loss should fall upon Lee M. Scarborough as general agent because he was in a better position to avoid this loss. Inasmuch as he was a general agent and placed risks for other local agents, he was under a duty to place these risks in a safe and financially secure insurance company. The local agent in these circumstances had a right to rely upon the general agent's judgment and experience. Certainly he was in a better position to avoid this loss than Nelson, the local agent."

We find this holding of the trial court to be in error.
It appears to be almost universally held that where an insured is the holder of policies on which premiums have been paid for a term extending beyond the insolvency or dissolution of the company, he has a valid claim against the insurance company for the unearned premiums. This claim however is personal to the insured and can be exercised only against the receiver of the insolvent company, the insurance agent procuring the policy and advancing the premium to the company on behalf of the insured, not being responsible to the insured absent some showing of negligence or fraud on his part. The presumption is that the broker did his duty and the insured therefore has the burden of showing that the broker or agent was negligent. 44 C.J.S. Insurance § 129c, page 699 and § 172, pages 861-863. Louisiana adheres to this general rule. In Page v. Marcel, 44 So.2d 363 (La. App. 1st Cir. 1950) plaintiff, a licensed insurance agent, sold and delivered to defendant several insurance policies taken with the Keystone Mutual Casualty Company. As per agreement between plaintiff and defendant, the former paid the full premiums due under said policies, the defendant agreeing to repay the sums advanced on his behalf quarterly. Shortly following issuance of the policies Keystone was dissolved and the policies were cancelled. Plaintiff sued defendant for the sum advanced on his behalf to Keystone and the defendant resisted such demand asserting that he was entitled to claim a credit as against plaintiff for the premiums unearned under the cancelled policies. In affirming a judgment favorable to plaintiff for the amount sued for our brethren of the First Circuit stated as follows:

"Where an insured is the holder of policies on which premiums have been paid for a term extending beyond the insolvency or dissolution of the company, he has a valid claim against the insurance company for the unearned premiums on *1265 the pro rata basis, and it is equally true that if the premiums were unpaid at the time of insolvency or dissolution of the company, such policyholders are liable to the receiver or liquidator for so much thereof as has been earned, but they are not liable for the unearned residue, that is, premiums for the unexpired term of insurance. 44 C.J.S., Insurance, § 129c, page 699. This is the contention of counsel for defendant and he would be correct if the plaintiff was the insurance company, but in the present case the facts are clear that the plaintiff loaned to or advanced on behalf of the defendant $1442.29 which was paid to Keystone Mutual Casualty Company to cover premiums for one year on the public liability insurance policies belonging to defendant.

Under the facts in this case, the defendant alone could claim the unearned premiums from the company and is entitled to same from the company. The Keystone Mutual Casualty Company is liable to the defendant for the unearned premiums, and it is equally true that the plaintiff is not, under the facts or law, responsible for these unearned premiums. Call the obligation sued upon herein a loan, an advance on behalf of the defendant, or a straight out payment of premiums for the defendant by the plaintiff, it still would be a personal account due by the defendant to the plaintiff, and under the facts in this case and the law, the plaintiff is entitled to recover. This case is nothing more nor less than a suit on a personal account for money loaned or, at least, a suit by an insurance agent for premiums advanced or paid on behalf of an insured for which he is entitled under the law to personally sue for and recover, regardless of the insolvency or dissolution of the company or cancellation of the policies. Defendant cannot offset unearned premiums against this debt, neither is the plaintiff given the right under the law nor is any authority shown under the facts in this case for plaintiff to collect the unearned premiums from the insurance company in order to satisfy the defendant's obligation. The question of the collection and payment of unearned premiums is one strictly between the insured, defendant herein, and the insurer, Keystone Mutual Casualty Company."
There is no compelling reason why the sound legal principles set forth above should not apply with equal force to the facts presented in the instant case. True, plaintiff and defendant herein are neither the insured nor the insurer, however, the policies of insurance issued by All Star were accepted and placed by plaintiff at the request of defendant with the understanding that plaintiff would advance and pay the premium due All Star on defendant's behalf. LSA-R.S. 22:1261 specifically authorizes a licensed surplus line broker to accept and place surplus line business for any insurance agent licensed in the State of Louisiana. As in Page, supra, "[c]all the obligation sued upon herein a loan, an advance on behalf of the defendant, or a straight out payment of premiums for the defendant by the plaintiff, it still would be a personal account due by the defendant to the plaintiff, and under the facts in this case and the law, the plaintiff is entitled to recover". It is true that having been paid by his clients for the premiums due under the All Star policies, defendant undertook to replace this coverage upon dissolution of All Star and allowed his clients credit for the unearned premiums. Although defendant's efforts in this regard and his allowance of credit to his clients is laudable, this circumstance can have no bearing whatever on the obligation between plaintiff and defendant.
Defendant contended at trial, although not affirmatively pled, that he is entitled to the claimed credit because plaintiff violated his duty as a licensed surplus line broker by placing the risks insured against with All Star, a financially insecure company. The trial court so held, Although plaintiff contends on appeal that such defense must be affirmatively pled and that the trial court erred in considering this issue over timely objection, we need not consider this procedural issue for we find no merit or evidentiary basis for this holding.
*1266 The law provides that if certain insurance coverages cannot be secured from authorized insurers, such coverages, designated as "surplus lines", may be secured from unauthorized insurers, subject to a number of conditions imposed by statute. LSA-R.S. 22:1252 et seq. Of course under the general rule plaintiff is presumed to have diligently performed his duty as a surplus line broker and the burden is on defendant to establish otherwise.
The record contains no evidence whatever that plaintiff violated any of the statutory conditions imposed upon licensed surplus line brokers. One of the conditions imposed upon such brokers is that they "shall not knowingly place surplus line insurance with insurers unsound financially". LSA-R.S. 22: 1262. Defendant offered no evidence whatever to establish that plaintiff placed the insurance in question with All Star with knowledge that All Star was unsound financially. Nor did defendant offer any evidence tending to establish that All Star was financially unstable when the insurance was placed with it. Quite to the contrary, the only evidence in the record is to the effect that plaintiff was in constant contact with the Louisiana Insurance Commissioner's office to confirm the financial stability of the company and its eligibility as a surplus line insurer. To hold as did the trial court is tantamount to holding surplus line brokers strictly liable for losses occasioned upon insolvency of surplus line insurers, a result clearly not intended by the Uniform Unauthorized Insurers Act.
For the above reasons we conclude that plaintiff is entitled to recover from defendant the premiums paid on the latter's behalf to All Star Insurance Company and that defendant is not entitled to claim as a credit against the sum due the premiums unearned as a result of All Stars' insolvency. The trial court judgment will be amended accordingly.
IS PLAINTIFF ENTITLED TO ATTORNEY'S FEES UNDER LSA-R.S. 9:2781?
LSA-R.S. 2781 provides in pertinent part as follows:

"When any person fails to pay an open account within thirty days after receipt of written demand therefor correctly setting forth the amount owed and a copy of the invoices in support thereof, that person shall be liable for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant . . . .
In rejecting plaintiff's demand for attorney's fees the trial court stated:

"The second issue is whether or not petitioner is entitled to reasonable attorney fees. In the past, attorney fees were not recoverable on open account. This was changed by the recent amendment of R.S. 9:2781 but this statute must be strictly construed and it states that only after receipt of a written demand correctly setting forth the amount owed and a copy of invoices and support thereof must a person pay attorney fees. The amount claimed in the written demand was $6,021.87, suit was filed for $6,020.97 and now petitioner claims that he is owed $4,834.19 and this is the amount he attempted to prove at the trial. Thus, plaintiff did not send written demand for the correct amount owed and is not entitled to attorney fees. . . ."
Appellant contends that the trial court erred in his denial of this demand because the amount stated in the demand letter was the same as the total of the attached invoices (except for a 90¢ error resulting from addition or typing) and that the amount proven at trial was less because of unearned premiums under the policies subsequently credited to defendant's account.
We agree with the trial judge's resolution of this issue. A claimant is entitled to attorney's fees when he secures a favorable judgment on an open account if he has strictly complied with the provisions of the cited statute. One of the conditions for recovery is a showing that the claimant has made written demand therefor correctly setting forth the amount owed, with invoices attached, to no avail. In the instant *1267 case plaintiff, by letter dated May 18, 1977, demanded of plaintiff the sum of $6021.87. The amount demanded is shown by the record to be clearly incorrect. At trial plaintiff admitted that the amount initially demanded in his letter of May 18, 1977 and in his original petition was excessive by some $1187.68. He argues however, that at the time of demand the amount sought was owed, his ultimate recovery being reduced because of credits to defendant's account which accrued subsequent to the formal demand by reason of policy cancellations and return of premiums thereunder. We cannot agree that the record sustains plaintiff's contention that on May 18, 1977 defendant owed the sum demanded and that the credits to which defendant was entitled accrued subsequent thereto. Although the record is sketchy in this respect it appears that at least by April 12, 1977 all of the policies secured for defendant had been cancelled. Although defendant's account may not have been properly credited with all return premiums as of the date the demand letter was written he was clearly entitled to such credits and the fact remains that the amount demanded was incorrect. Under these circumstances we conclude that plaintiff is not entitled to an award of attorney's fees under LSA-R.S. 9:2781.
For the above and foregoing reasons the judgment of the trial court is amended so as to increase the award to the plaintiff to the sum of $4834.19, subject to credit for the amount of $3090.45 tendered by defendant and accepted by plaintiff. In all other respects the judgment appealed from is affirmed. Costs of this appeal are to be borne one-half by appellant and one-half by appellee.
AMENDED AND AFFIRMED.