556 So.2d 272 (1990)
Jonathan DARDAR, et al.
v.
INSURANCE GUARANTY ASSOCIATION.
No. 88 CA 1881.
Court of Appeal of Louisiana, First Circuit.
January 24, 1990.
*273 Wayne T. Lebouef, Larose, for Jonathan Dardar, et al.
Charles A. Schutte, Jr., Mathews, Atkinson, Guglielmo, Marks & Day, Baton Rouge, for Ins. Guaranty Ass'n.
Before CARTER, SAVOIE and ALFORD, JJ.
SAVOIE, Judge.
This is a suit for payment of an insurance claim. Plaintiffs, Jonathan Dardar, Jennifer McGaha and Joe McGaha, filed a petition against defendant, Insurance Guaranty Association (IGA). The trial court granted judgment for plaintiffs and against IGA at the trial on the merits. Defendant, IGA, appeals the court's ruling.
On June 8, 1985, the McGahas obtained a policy of homeowner's insurance, issued by American Fidelity Fire Insurance Company (American Fidelity), covering their mobile home located in Cut Off, Louisiana. On June 27, 1985, a general change endorsement was issued naming Jonathan Dardar as the insured and Joe McGaha as the loss payee. This was done due to the fact that the McGahas had moved to Oklahoma and were leasing the trailer to Jonathan Dardar.
On September 6, 1985, an order was entered by the Supreme Court of the state of New York and for the county of Nassau placing American Fidelity in rehabilitation. On September 20, 1985, an amended order of rehabilitation was entered, cancelling all insurance obligations and policies of American Fidelity written for policyholders outside of the state of New York, effective October 20, 1985. Notices of cancellation were mailed to policyholders on October 4, 1985, by the Superintendent of Insurance for the state of New York and on October 29, 1985, by the Chabert Insurance Agency, plaintiffs' local agent.
High waters brought about by Hurricane Juan flooded the mobile home on October 30, 1985.
Plaintiffs submitted a claim through the Chabert Agency for the damage occasioned by the flood. They claimed that at this time they first learned of the insolvency of American Fidelity. They also claim to have received neither of the notices.
On March 26, 1986, American Fidelity was ordered liquidated by the Supreme Court of the state of New York, triggering the liability of IGA for "covered claims" arising under policies of insurance issued by American Fidelity in Louisiana. LSA-R.S. 22:1382.
The trial court found a "covered claim" existed because plaintiffs were not given actual or constructive notice of the termination of the policy. It found this was required pursuant to LSA-R.S. 22:636. The court felt that insufficient evidence was presented on behalf of the defendant to show a notice of cancellation was actually mailed to plaintiffs. The trial court also believed the testimony of plaintiffs concerning their failure to receive any notice. Therefore, it found the order of the New York court terminating all out of state policies on October 20, 1985, was not effective as to plaintiffs.
*274 We first note that Louisiana and New York have adopted the Uniform Insurers Liquidation Law. In Louisiana, it is found in Title 22 of the Revised Statutes, Sections 757 to 763. This act's purpose is to centralize insurance rehabilitation and liquidation proceedings in one state's court so as to protect all creditors equally. As such, we recognize the authority of the New York court to issue orders in rehabilitation and liquidation proceedings which affect insureds in the state of Louisiana. Specifically, we find the New York court had authority to cancel all insurance policies issued by American Fidelity to insureds located in the state of Louisiana. Therefore, we hold as long as Louisiana law governing the cancellation of insurance policies was complied with, the policy in the instant case was cancelled effective October 20, 1985, pursuant to the Amended Order of Rehabilitation.
Defendant, IGA, argues that Page v. Marcel, 44 So.2d 363 (La.App. 1st Cir.1950), controls this issue. In Page, a Pennsylvania court ordered the liquidation of the Keystone Casualty Company on June 26, 1947, and we found this order cancelled Keystone's policies as a matter of law on that date. Page, 44 So.2d at 364, 365. Supporting our decision in Page is LSA-R.S. 22:738 which fixes the rights and liabilities of an insolvent insurer and its creditors as of the date of the entry of the order directing liquidation, unless otherwise ordered by the court.
We find the instant case distinguishable from Page and find LSA-R.S. 22:738 inapplicable. Our finding is based on the language contained in LSA-R.S. 22:736 and LSA-R.S. 22:737.
LSA-R.S. 22:736 sets out the duties of the Commissioner of Insurance as a rehabilitator. Under this statute, the Commissioner of Insurance conducts the business of the insurer in an attempt to remove the causes and conditions which were grounds for the rehabilitation. He may apply to the court at any time for either an order directing liquidation, if further efforts to rehabilitate the insurer would be futile, or for an order permitting the insurer to resume control of the business, if the causes and conditions which made the proceeding necessary have been removed.
LSA-R.S. 22:737 deals with the duties of the Commissioner of Insurance as a liquidator. Under this statute, he may sell property of the insurer, give notice to claimants of the insurer to present claims and, to protect policyholders of the insurer whose contracts were cancelled by the liquidation order, solicit a contract whereby a solvent insurer assumes some or all liabilities of former policyholders. These acts for the most part are subject to the prior approval of the court.
We hold the rehabilitator, in an attempt to remove the causes and conditions which made the proceeding necessary, may cancel some or all of the issued policies. However, we hold that while the liquidation order cancels all policies as a matter of law, the rehabilitator is governed by LSA-R.S. 22:636, which sets out the procedure for cancellation of a policy by the insurer. This is true because the Commissioner of Insurance in a rehabilitation order takes control of the insurer, has the authority to conduct business and only at his option may some or all of the issued policies be cancelled. Therefore, because the rehabilitator, in effect, steps into the shoes of the insurer, he is bound by the same constraints as is the insurer in the normal course of business. One of the constraints placed upon him is that he must follow the provisions of LSA-R.S. 22:636 in regards to cancelling an insured's policy.
LSA-R.S. 22:636, at the time in question, provided in pertinent part:
A. Cancellation by the insurer of any policy which by its terms is cancellable at the option of the insurer, or of any binder based on such policy, may be effected as to any interest only upon compliance with either or both of the following:
(1) Written notice of such cancellation must be actually delivered or mailed to the insured or to his representative in charge of the subject of the insurance not less than five days prior to the effective date of cancellation.

*275 (2) Like notice must also be so delivered or mailed to each mortgagee, pledgee, or other known person by the policy to have an interest in any loss which may occur thereunder.
B. The mailing of any such notice shall be effected by depositing it in a sealed envelope, directed to the addressee at his last address as known to the insurer or as shown by the insurer's records, with proper prepaid postage affixed, in a letter depository of the United States Post Office. The insurer shall retain in its records any such item so mailed, together with its envelope, which was returned by the Post Office upon failure to find, or deliver the mailing to the addressee.
C. The affidavit of the individual making or supervising such a mailing, shall constitute prima facie evidence of such facts of the mailing as are therein affirmed....
In addition to LSA-R.S. 22:636, the subject policy provided for cancellation by the insurer as follows:
Insurance under this policy may be cancelled at any time by the company by mailing or delivering to the Lienholder and the Named Insured written notice stating when, not less than ten (10) days thereafter, such cancellation shall be effective. When required by the law of the state in which this policy is issued, such notice shall be sent by registered mail, and such notice, mailed with postage fully prepaid, either by regular first class or by registered mail as the case may be to the address of the Lienholder and of the Named Insured last known to the Company or its authorized agent, shall be sufficient proof of notice to all parties of interest. Delivery of such written notice shall be equivalent to mailing.
Defendant submitted an affidavit by Ken Kapfhammer, an employee of the Special Deputy Superintendent of Insurance of the state of New York in charge of the American Fidelity proceedings. Mr. Kapfhammer states he mailed notices of cancellation to persons as per the binders attached to the affidavit, postage prepaid, on October 4, 1985. He also states in his affidavit that the names and addresses on the envelopes were compared with the names and addresses on the attached binders.
Attached to the affidavit is a copy of Mailing Statement by the Postal Service showing that the New York State Insurance Department, Liquidation Bureau, mailed 15,157 pieces of mail on the 4th day of October, 1985. A copy of a receipt for the postage paid to mail the pieces and a copy of a check written for the amount due, payable to the order of the Postmaster of New York, are also attached. The receipt for the postage lists American Fidelity as the organization for which the mailing was prepared.
In addition to the post office documents and the check, a copy of the insurance policy in question is attached which lists the insured as Jennifer McGaha whose address is listed as Route 1, Box 342, Cut Off, La. 70345. A copy of the general change endorsement follows, changing the name of the insured to Jonathan Dardar (no address) and lists the loss payee as Joe McGaha, 836 East Maple St., Cushing, Oklahoma, 74023.
We find the affidavit submitted by the defendant, including the documents attached thereto, is not sufficient to constitute prima facie evidence of the mailing. LSA-R.S. 22:636(C).
The policy and general change endorsement show addresses to which notices of cancellation could possibly have been sent. However, the affidavit and attached documents do not contain any proof, such as a computer print out, which would verify the names and addresses of persons to whom the cancellation notices were actually sent. There is nothing in the record which reflects that a notice of cancellation was actually mailed to either the McGahas or Jonathan Dardar. Based on this evidence, we can not conclude that a notice of cancellation was ever mailed to the McGahas or Jonathan Dardar. Bobo v. American Fidelity Fire Ins. Co., 550 So.2d 1278 (La. App. 4th Cir. 1989).
*276 After a thorough review of the record and reasons for judgment from the trial court, we find no error in the trial court's conclusion that neither the McGahas nor Jonathan Dardar received adequate notice of the cancellation of the insurance policy issued by American Fidelity. Accordingly, the trial court's judgment in favor of plaintiffs is affirmed. Costs of this appeal are assessed against the defendant, Insurance Guaranty Association.
AFFIRMED.