84 So.2d 205

Mrs. Jennie Hobbs BARBOUR

v.

Clyde A. BARBOUR, III.

No. 42128.

Dec. 12, 1955.

Reed, Reed & Reed, New Orleans (Floyd J. Reed, New Orleans, of counsel), for defendant-appellant.

Helm, Simon & Gordy, New Iberia, for plaintiff-appellee.

McCALEB, Justice.

Mrs. Jennie Hobbs Barbour brought this suit to dissolve, for failure of consideration, the transfer of 249 shares of the corporate stock of Oaklawn Manor to her grandson, Clyde A. Barbour III, an emancipated minor. The facts and circumstances which give rise to the controversy are not seriously disputed and we find them to be as follows:

Plaintiff, a widow 76 years of age, has made her home on the antebellum estate in St. Mary Parish, known as Oaklawn Manor, for some 27 years, where she reared, supported and cared for defendant, until the latter part of 1952. The estate, which is and has been operated as a tourist attraction, was transferred in 1926 to a nontrading corporation organized pursuant to Act 254 of 1914. This corporation issued 250 shares of stock and, in 1950, plaintiff, who was its president, owned 249 of the outstanding shares and defendant, the Secretary-Treasurer, owned the other.

Over a period of years, the grounds and buildings of Oaklawn Manor had become run down and were in dire need of repairs. To rehabilitate the property, the corporation borrowed, in December of 1950, the sum of $15,000, payment of which was secured by a mortgage upon the estate. This loan was payable in quarterly installments of $375, commencing April 1, 1951.

On January 19, 1951, plaintiff transferred to defendant by notarial act her entire stock interest in Oaklawn Manor Corporation, evidenced by two certificates, one for 240 shares and the other for nine shares, for the stated consideration of the assumption by defendant of the $15,000 mortgage bearing on the estate. Contemporaneously, the parties orally agreed that defendant would care for and support his grandmother for the rest of her life.

On November 19, 1952, the original agreement was modified so as to vest in plaintiff the usufruct of the stock she had transferred to defendant. In this agreement, which was also in authentic form, defendant's oral obligation to support and care for plaintiff for the rest of her life was specifically confirmed, it being declared that defendant had complied with this obligation since the transfer of the stock.

From the time of the transfer of the stock to the defendant until the latter part of 1952, when plaintiff caused defendant to be ejected from the property, the corporation received some $31,000 in cash in which was included practically all of the proceeds of the $15,000 mortgage loan. During that period, defendant used these funds for making the quarterly payments falling due on the mortgage note and also

withdrew much of the remaining funds for various other purposes. As a result, the corporation's bank balance was depleted to such an extent that by the end of 1952 there was only ten cents left in its account and yet no appreciable repairs had been made on the premises.

It is the contention of plaintiff that defendant assumed personal responsibility for the payment of the mortgage and that his payment of the installments with the corporate funds was in violation of his obligation.

The defendant, on the other hand, maintains that, whereas he was personally responsible for the payment of the mortgage, plaintiff knew at the time she made the contract that he had no money of his own and that she could not have possibly expected that he would pay the installments coming due except out of the corporate funds. He further says that there can be no doubt that he has performed his promise to support his grandmother, as she admitted that he had complied with this obligation in the agreement dated November 19, 1952, wherein he conveyed to her the usufruct of the stock.

After a hearing in the district court there was judgment for plaintiff as prayed for. Defendant has appealed and, in this court, his counsel assign as ground for reversal the following errors attributable to the district judge:

(a) In holding that defendant violated his agreement to assume the mortgage by using corporate funds for payment of the quarterly installments;

(b) In ruling that defendant had not discharged his obligation to care for plaintiff, in spite of her admission in the agreement of November 19th 1952 that this obligation had been previously met;

(c) In ruling in favor of plaintiff notwithstanding her failure to discharge the burden of proof resting upon her, and

(d) In refusing a new trial.

After considering the agreement and the evidence submitted by the parties, we are fully satisfied of the correctness of the judgment of the district court, which is fortified by a well-reasoned opinion of the judge.

To begin with, we think that the contract clearly imposed on the defendant the obligation of paying the mortgage with his own funds and not with those of the corporation. The only consideration (other than defendant's promise of support) flowing to plaintiff under the contract was defendant's assumption of the corporation's obligation on the mortgage, which meant that he was to pay this indebtedness as it matured out of his personal funds for and on behalf and in the place and stead of the corporation. If the corporate funds were used for this purpose, it, and not the defendant, was discharging the

obligation which he personally assumed and his assumption would have ultimately amounted to naught. As a matter of fact, the record shows that defendant did not pay the installments on the mortgage with corporate funds but, rather, that the Corporation itself paid them by checks drawn on its bank by defendant acting in his official capacity as Secretary-Treasurer. The circumstance that defendant owned all of the stock in the corporation does not change the status of the payments made by it forasmuch as it is a legal entity separate and apart from defendant. Neal v. Daniels, 217 La. 679, 47 So.2d 44. Accordingly, there has been a complete failure on defendant's part to comply with his obligation.

◼ And defendant cannot escape the consequences of his breach by asserting that his grandmother expected that he would use the corporate funds to discharge his obligation because she was well aware that he was penniless and could not obtain funds from any other source. Liability for nonperformance of contractual obligations is not to be gauged "by the means or ability of the party to fulfill his agreement, but by the nature of the thing which forms the object of it". Article 1891, Civil Code. Poverty or lack of means with which to perform a contract is not a legal excuse. Christine v. Chaney, 5 La. Ann. 219 and Forsman v. Mace, 111 La. 28, 35 So. 372.

◼ Moreover, were we to concede the validity of defendant's contention that plaintiff did not expect him to personally perform the obligations imposed by the contract, the result would be the same— for if it was not the intention of the parties that defendant was to pay the corporate obligation, there was no consideration[1] for the transfer by plaintiff of her stock. "An obligation without a cause, or with a false or unlawful cause, can have no effect." Article 1893, Civil Code.

The evidence also makes it manifest that defendant did not comply with his promise to support his grandmother and, therefore, that consideration, which was sufficient to sustain the agreement, likewise failed. Indeed, defendant readily admitted on the witness stand that he did not at any time personally contribute towards his grandmother's support, maintenance and welfare.

Defense counsel, pointing to the agreement of November 19, 1952 wherein the parties declare that defendant had cared for plaintiff since the date of the transfer of the stock, assert that this acknowledgment of support by plaintiff is not subject to contradiction by affirmative evidence to the contrary. However, we think it plain that defendant is in no position to rely on that statement in view of his voluntary judicial confession that he was unable to and did not support plaintiff at any time.

1. The agreement to support plaintiff was, of course, a consideration but that consideration failed as we hereinafter demonstrate.

This admission of defendant, which is full proof against him, Civil Code, Article 2291, precludes his dependence on the contractual statement and also furnishes a complete answer to the complaint of his counsel that plaintiff has failed to discharge the burden of proof resting upon her.

Finally, counsel say that the trial judge should have granted a new trial for the reason that, notwithstanding the numerous affirmative allegations of fact contained in the answer and reconventional demand of defendant, his former attorneys, who handled his case in the trial court, made no attempt to adduce evidence in support thereof.

It is difficult for us to perceive how or why the failure of counsel to offer testimony to sustain allegations made in a pleading furnishes any basis for a new trial of a case in the absence of a showing that evidence was available and that the attorneys deliberately or unjustifiably neglected to make use of it. It appears that defendant was represented in the trial court by able counsel, all reputable members of the bar, and we presume that the reason why they did not offer proof in support of the allegations of defendant's answer was due to the fact that there was no evidence available.

The judgment appealed from is affirmed.

SIMON, J., recused.