Lewis R. CRIST, Director, Division of Insurance, Department of Economic Development, State of Missouri, Acting as a Domiciliary Receiver of Transit Casualty Co. in Liquidation, Plaintiff-Appellant,

v.

SHARP ELECTRIC, INC.,
Defendant-Appellee.

Lewis R. CRIST, Director, Division of Insurance, Department of Economic Development, State of Missouri, Acting as a Domiciliary Receiver of Transit Casualty Co. in Liquidation, Plaintiff-Appellant,

v.

DRAKE CONCRETE CO. OF BELLE CHASSE, INC., Defendant-Appellee.

Nos. 88-3508, 88-3769.

United States Court of Appeals,
Fifth Circuit.

June 20, 1989.

Kent B. Ryan, and Andrew S. de Klerk, Lemele, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, New Orleans, La., for Lewis R. Crist.

Judith R. Atkinson, Baton Rouge, La., for amicus-LA. Guaranty.

Norwood N. Hingle, Jr., Charles N. Miller, Jr., New Orleans, La., for Sharp Elec., Inc.

George Pivach, II, Pivach, Cossich & Pivach, Belle Chasse, La., for Drake Concrete Co.

Before BROWN, WILLIAMS and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

In this diversity case, when the insurer was declared insolvent, the insureds owed the insurer some $194,000 in unpaid premiums. The insurer, however, because of insolvency, failed to defend claims after the date of insolvency. The insureds refused to pay the insurer's receiver on grounds that the insurer's failure to defend was a breach of the contract, relieving the insureds of any further obligation under the contract. The district courts upheld the appellees' contention under principles of general contract law. We reverse because the Louisiana insurance insolvency law applies, rather than general contract law.

## I

Altogether, five insurance policies issued by Transit are at issue in these consolidated appeals. Two, a general and automobile liability policy and a worker's compensation policy, were issued to Drake Concrete Company of Belle Chasse, Inc. ("Drake"). The policy periods for both expired on June 30, 1985. Three policies, two general and automobile liability policies and one worker's compensation policy, were issued to Sharp Electric, Inc. ("Sharp"). None of these policies expired later than January 1, 1985.

Premiums on the policies were due at the beginning of the respective policy periods. However, some adjustment of the premium was necessary since a basic component in the calculation of the premiums was the size of the company's payroll during the policy period. Because of the impossibility of fixing that figure in advance, the company initially used an estimate, subject to later audit and adjustment. If the actual payroll was higher than the estimate, the insured was undercharged at the beginning of the policy period and owed additional premiums. If the actual payroll was lower than the estimate, the insured was overcharged and was owed a refund. The insured's obligations under the policies thus became fixed at the end of each policy term.

After payroll costs were determined at the end of each of the five policy periods, Drake had underpaid its premiums by approximately $57,000, and Sharp had underpaid by approximately $137,000. On December 3, 1985, *well after the policy periods of the five policies at issue had ended,* Transit was declared insolvent and placed into receivership pursuant to an amended order of liquidation. Crist became receiver for Transit and, acting to marshal Transit's assets, sought to recover the unpaid premiums from Drake and Sharp.

On November 2, 1987, Crist filed a complaint against Sharp. Sharp denied that it owed additional premiums, arguing that, after insolvency, Transit had breached its contractual duty under the policy to defend Sharp in lawsuits. Sharp filed a motion for summary judgment on June 2, 1988, and on July 1, 1988, without oral argument, the district court granted Sharp's motion for summary judgment, dismissing Crist's suit. In his order dated July 1, 1988, Judge Carr stated that

Transit breached its obligation to defend and for compensation benefits in accord-

ance with its obligations under the policies for whatever reason, and is therefore not entitled to recover the premiums claimed. Defendant's motion for summary judgment is granted, and Plaintiff's suit will be dismissed.

On December 17, 1987, Crist filed a complaint against Drake. Drake denied that it owed additional premiums effectively for the same reasons as Sharp. On August 11, 1988, Drake filed a motion for summary judgment. On September 29, 1988, without oral argument, Judge Sear granted Drake's motion for summary judgment for essentially the same reasons as in Sharp's case. Crist filed timely appeals of both district courts' decisions. The appeals have been consolidated.

## II

The threshold issue in this case is whether Louisiana contract law or the Louisiana law governing insolvency of insurers controls. Sharp and Drake argue that this case is controlled by Louisiana general contract law. They contend, and the district courts agreed, that Transit had not fulfilled its obligations under the insurance contracts because after the date of insolvency it failed to provide legal defense against lawsuits pursuant to the terms of coverage. It is a fundamental doctrine of Louisiana contract law, they maintain, that one "cannot require enforcement of a contract where he is unwilling or unable to discharge his own undertaking." *Pennington v. Drews,* 49 So.2d 5, 8 (La.1949) (citation omitted). Therefore, they argue, Crist has no right to collect the premiums.

Transit responds that the Louisiana law governing insolvency of insurers controls. That law is an interlocking web of statutes, starting with La.Rev.Stat. 22:738, which provides that "the rights and liabilities of the insurer and of its creditors ... shall be fixed as of the date of the entry of the order directing liquidation." That statute is supplemented by La.Rev.Stat. 22:1183, which describes in detail the rights and liabilities of insurers and their insureds after the insurer is declared insolvent:

A. Any claim of an insolvent insurer against an insured or against the agent through whom a policy was written, concerning any policy of insurance issued or delivered in this state shall be subject to the following limitations:

(1) The insured shall not be liable to an insolvent insurer for any premium which had not been earned on a pro rata basis on the date the insurer was declared insolvent.

When an insured has paid its premiums but not received policy benefits because of the insurer's insolvency, Louisiana's Insurance Guaranty Association Law also becomes a part of the legislative scheme affecting the rights and obligations of the insolvent insurers and their insureds. La. Rev.Stat. 22:1382 establishes the powers and duties of the Louisiana Insurance Guaranty Association (LIGA). It provides that

(1) the Association shall:

(a) be obligated to the extent of the covered claims existing prior to the determination of the insurer's insolvency ... but such obligation shall include only that amount of each covered claim.... Notwithstanding the foregoing, the Association shall pay the full amount of any covered claim arising out of a workmen's compensation policy. In no event shall the Association be obligated to a policyholder or claimant in an amount in excess of the obligation of the insolvent insurer under the policy from which the claim arises.

(b) be deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent.

Another section of the Insurance Guaranty Law, La.Rev.Stat. 22:1385, defines the effect of paid claims, providing that any person recovering from LIGA will be deemed to have assigned his rights under the policy to LIGA to the extent of his recovery from LIGA. Thus, argues Crist, LIGA would be subrogated to any rights against the receiver that the insured previously had, and

the insured's rights would be extinguished to the extent of his recovery from LIGA.

Finally, Crist contends that even if the principles of general contract law rather than insurance insolvency law were applied in this case, the insured must deem that the insurer has performed under La.Civ.Code art. 1855, which provides: "Performance may be rendered by a third person, even against the will of the obligee, unless the obligor or the obligee has an interest in performance only by the obligor."

In sum, Crist's position is that this is an insurance insolvency case governed by the specialized insurance insolvency laws, including the insurance guaranty statutes, and that under those laws Sharp and Drake may not escape the payment of premiums that were earned on the theory that Transit breached its contract by its failure to meet obligations that matured after the insolvency.

## III

### A.

■■■ The courts of Louisiana "have repeatedly stated that when two statutes are in conflict, the statute that is more specifically directed to the matter at issue must prevail as an exception to the statute that is more general." *Smith v. Cajun Insulation, Inc.*, 392 So.2d 398, 402 (La.1980) (citations omitted). It follows with equal, if not stronger, force that a specific statute or framework of statutes that provides for the rights and liabilities of myriad parties competing over limited funds in special circumstances prevails over a more general doctrine developed in case law that governs the rights of a limited number of parties in ordinary circumstances. In short, the statutes cited by Crist must provide the law of this case because they are specifically directed toward the situation of the insolvent insurer, whereas the general contract law cited by Sharp and Drake does not address our specific situation. Since insurance insolvency law applies rather than the general contract law that the district courts applied, we come to the immediate conclusion that we must reverse the district courts'

judgments. This is true because the respective district courts entered judgments based on general contract law only, and made no determination whether under the insurance insolvency law the insureds were entitled to any relief.

### B.

There remains the question whether we must remand for a determination of the rights and liabilities of the parties under the insurance insolvency laws. We decide not.

■■■ As we noted earlier, La.Rev.Stat. art. 22:738 provides that the rights and liabilities of the insurer and its creditors "shall be fixed as of the date of the entry of the order directing liquidation," or December 3, 1985, in this case. We also look to La.Rev.Stat. art. 22:1183. That statute places the following limitation on the basic right of an insolvent insurer, or its receiver, to recover premiums from delinquent insureds: "(1) The insured shall not be liable to an insolvent insurer for any premium which had not been earned on a pro rata basis on the date the insurer was declared insolvent." Thus, whether Sharp and Drake are entitled to any relief under the insurance insolvency statutes turns on whether the premiums had been earned on the date the insurer was declared insolvent.

■■■ Sharp and Drake would have us hold that premiums cannot be "earned" within the meaning of the statute when the insurer has failed to defend after insolvency. Louisiana, however, subscribes to the rule that "a decree of dissolution or an adjudication of insolvency, coupled with the appointment of a receiver, cancels or terminates outstanding policies by operation of law...." *Page v. Marcel*, 44 So.2d 363, 365 (La.App.1950). At this point, LIGA assumes the remaining obligations of the insurer. It follows that if the policies are cancelled by law on the date of insolvency, whether the premiums are earned or unearned is not controlled by any event occurring after that date when LIGA has stepped in to defend. The court in *Page* explained the effect that this cancellation of the policies has:

Where an insured is the holder of policies on which premiums have been paid for a term extending beyond the insolvency or dissolution of the company, he has a valid claim against the insurance company for the unearned premiums on the pro rata basis, *and it is equally true that if the premiums were unpaid at the time of insolvency or dissolution of the company such policyholders are liable to the receiver or liquidator for so much thereof as has been earned but they are not liable for the unearned residue, that is, premiums for the unexpired term of insurance.*

*Id.* at 367 (citation omitted) (emphasis added).

■ Here, the period for which premiums were paid did *not* extend beyond the date of insolvency. Since it is undisputed here that all five policy periods had long since expired before the date of insolvency, the disputed premiums were earned in their entirety on that date since the full policy period had run.

### C.

■ The only colorable claim in this case arises from the allegation that Transit failed to pay workmen's compensation benefits to two Sharp employees before the date of insolvency and before LIGA assumed the role of the insurer. The record reflects that Transit did fail to make workmen's compensation payments during the two weeks before it went into receivership. To the extent, however, that this failure on the part of Transit may raise some basis for relief for Sharp, it was cured by LIGA's later assumption of the obligations of Transit, and the reimbursement to Sharp for the amount it had paid out on the claim.

### IV

Our decision today that enforces the right of the receiver to collect premiums due from Sharp and Drake, obviously fulfils the purpose of the receivership statutes. With respect to the outstanding claims that these insureds have against Transit, they are placed in the same category as other creditors of their class. For us to have applied ordinary contract law would have given these two creditors an unjustified preference over other creditors with perhaps equally justifiable claims. The rights of these insureds can best be determined when judged against the rights of other creditors and insureds. The judgment of the district court is therefore REVERSED and the case is remanded for entry of judgment in favor of the plaintiff.

REVERSED AND REMANDED.