550 So.2d 1278 (1989)
Virginia BOBO a/k/a Virginia Bob,
v.
AMERICAN FIDELITY FIRE INSURANCE COMPANY a/k/a Fidelity Fire a/k/a American Consumer Insurance Company, Eslava & Clements, Inc. Robert Politzer a/k/a Bob Politzer, World Wide Insurance Brokers and Louisiana Guaranty Association, an Agency of and the State of Louisiana.
No. 88-CA 1918.
Court of Appeal of Louisiana, Fourth Circuit.
September 28, 1989.
*1279 Mathews, Atkinson, Guglielmo, Marks & Day, Charles A. Schutte, Jr., Baton Rouge, for appellant.
Jules A. Fontana, Jr., New Orleans, for appellee.
Before GARRISON, CIACCIO and BECKER, III, JJ.
CIACCIO, Judge.
Defendant, Louisiana Insurance Guaranty Association (LIGA), appeals a district court judgment rendered in favor of plaintiff, Virginia Bobo, awarding her $7,500 in damages for the property loss she sustained when flooding during Hurricane Juan damaged her mobile home. The trial court found that the insolvent insurer of plaintiff's mobile home had failed to give plaintiff adequate notice prior to cancelling the policy on the trailer. We affirm.
On June 12, 1985, Bobo purchased a boat using proceeds from a loan obtained from Credithrift of America, Inc. As collateral for the loan, Bobo placed a chattel mortgage on her mobile home and also purchased insurance coverage on it, a requirement of Credithrift. Bobo applied for the insurance through the agency of Eslava & Clements, Inc. (E & C) which obtained the policy through Worldwide Insurance Brokerage, Inc., the managing general agent in Louisiana for American Fidelity Fire Insurance Company, the New York based company which issued the policy. Under its terms, the policy provided coverage from June 12, 1985 to June 12, 1986, comprehensive coverage in the amount of $6000 and coverage for personal effects in the amount of $1500. The policy also provided flood protection. Bobo paid $104 as a down payment on the insurance premium and financed the balance through Sun Finance Company.
On September 6, 1985, the Supreme Court of the State of New York ordered the New York Superintendent of Insurance to take possession of the assets of American Fidelity and to rehabilitate it. The court later issued an amended order on September 20, 1985 which declared the company insolvent and also terminated, as of October 20, 1985, all policies issued by American Fidelity to policyholders outside the state of New York. Pursuant to the court order, the Superintendent of Insurance mailed notices of cancellation on October 4, 1985 to all the out-of-state policyholders. The notice of cancellation allegedly advised each insured of the cancellation of his policy effective October 20, 1985. Bobo denies ever receiving the notice.
In early October 1985, Worldwide became aware of the New York court's rehabilitation order and on October 8, 1985, sent notices to all local agents, including E & C, advising them of the order and the effective cancellation date of the policies. The letter further advised that replacement coverage had been arranged by Worldwide, and that an effort should be made to replace all policies with other insurance coverage.
Prior to receiving the October 8 letter from Worldwide, E & C had learned of the rehabilitation and cancellation order from an independent source. E & C allegedly sent its own letter to Bobo advising her of the cancellation of her insurance coverage effective October 20 and offering her replacement coverage. Bobo also denies receiving E & C's letter.
Around October 16 or 17, E & C's customer service representative, Jane Cure, contacted Bobo by telephone at her home. Ms. Cure advised Bobo that the insurance policy issued by American Fidelity on her mobile home would be cancelled effective October 20 and that replacement coverage had been arranged, but she would have to come in and pay $77.18 as part of the down payment for the replacement coverage.
On October 27, 1985, Hurricane Juan and heavy rains caused severe flooding in the *1280 lower part of St. Bernard Parish. As a result Bobo's mobile home had extensive water damage. Shortly thereafter, Bobo filed a claim with insolvent American Fidelity which the New York Superintendent of Insurance denied because the loss occurred after the effective date of the cancellation of the policy.
Bobo then filed suit against LIGA as guarantor of the insolvent insurer, among others, alleging that she never received written notice of the cancellation of her policy, and therefore, LIGA was liable on her claim against the insolvent company.
On appeal, LIGA argues that it is not liable on Bobo's claim because the New York court's order of rehabilitation cancelled her policy prior to the date of the flood and therefore, Bobo did not have a "covered claim" against the insurer within the meaning of the Louisiana Insurance Guaranty Association Law. L.S.A.-R.S. 22:1375 et seq. LIGA further argues that under the Uniform Insurers Liquidation Act, L.S.A.-R.S.22:757 et seq., full faith and credit must be given to the order of the New York Supreme Court, and as such, the rehabilitation order cancelled Bobo's insurance policy ipso facto regardless of whether there was compliance with notice requirements under Louisiana law. In its appellate brief, LIGA suggests that by affirming the trial court we would in effect hold that the New York Supreme Court was without power to order the termination of coverage on policies of out of state insureds pursuant to a plan of rehabilitation. We disagree.
The Uniform Insurers Liquidation Act has been adopted by both Louisiana and New York. L.S.A.-R.S.22:757 et seq., McKinney's Insurance Law, Sec. 7408 et seq. The Act provides for a uniform, orderly and equitable method of making and processing claims against defunct insurers and provides for a fair procedure to distribute the assets of defunct insurers.
When the Louisiana legislature adopted the Uniform Insurers Liquidation Act in 1948, it specifically recognized the benefits of centralizing the management over delinquency proceedings in the courts of one state. The Act provides that claims of Louisiana residents against out-of-state insurers must be filed in the state where delinquency proceedings are instituted unless an ancillary receiver has been appointed in Louisiana. L.S.A.-R.S.22:760(A). The Act also provides that where ancillary proceedings have not been commenced in Louisiana, controverted claims are governed by the laws of the foreign state. L.S.A.-R.S.22:760(B). Louisiana law clearly sanctions the proceedings from which the rehabilitation order in the present matter arose. Therefore, we recognize that because the New York Supreme Court properly had jurisdiction, it had the authority to terminate the subject policies, notwithstanding that the effect of the termination order was to cancel insurance contracts between American Fidelity and nonresident policyholders such as Bobo. However, we also recognize that all that is necessary to effectuate the court ordered cancellation of policies is that reasonable notice of cancellation be sent to the policyholders.
Under Louisiana law, requirements for notice of cancellation to both the insured and each lien holder with a protected interest are set forth in L.S.A.-R.S.22:636. The relevant provisions of the statute read as follows:
Sec. 636. Cancellation by insurer
A. Cancellation by the insurer of any policy which by its terms is cancellable at the option of the insurer, or of any binder based on such policy, may be effected as to any interest only upon compliance with either or both of the following:
(1) Written notice of such cancellation must be actually delivered or mailed to the insured or to his representative in charge of the subject of the insurance not less than five days prior to the effective date of the cancellation.
(2) Like notice must also be so delivered or mailed to each mortgagee, pledgee, or other known person shown by the policy to have an interest in any loss which may occur thereunder.

*1281 B. The mailing of any such notice shall be effected by depositing it in a sealed envelope, directed to the addressee at his last address as known to the insurer or as shown by the insurer's records, with proper prepaid postage affixed, in a letter depository of the United States Post Office. The insurer shall retain in its records any such item so mailed, together with its envelope, which was returned by the Post Office upon failure to find, or deliver the mailing to the addressee.
C. The affidavit of the individual making or supervising such a mailing, shall constitute prima facie evidence of such facts of the mailing as are therein affirmed.
D. The portion of any premium paid to the insurer on account of the policy, unearned because of the cancellation and in amount as computed on the pro rata basis, must be actually paid to the insured or other person entitled thereto as shown by the policy or by any endorsement thereon, or be mailed to the insured or such person as soon as practicable following such cancellation. Any such payment may be made by cash, or by check, bank draft, or money order. (Emphasis ours)
The Louisiana Supreme Court in Broadway v. All-Star Insurance Corporation, 285 So.2d 536 (La.1973) reevaluated the importance of actual receipt of the notice and also defined the meaning of the word "mailed" used in L.S.A.-R.S.22:636. The Court pointed out that the requirement "mailed to the insured" is subject to two interpretations:
The first is the depositing of the notice in the official United States mails, addressed to the insured. Under this interpretation, delivery of the notice to the insured is irrelevant.
The second interpretation is that mailed to the insured connotes a completed process, the transmission of the notice through the United States mails. Under this interpretation, affirmative proof of non-delivery renders the notice ineffectual. id at 539.
The Court applied the latter definition and, thus, gave new importance to the issue of whether the insured actually received notice of cancellation. It explained that the purpose of requiring that notice be given prior to the cancellation of an insurance policy is to allow the insured ample time to locate another insurer and thereby avoid an interruption in coverage. id.
The record in the present case shows that not only the insured Bobo, but also the lien holder Credithrift, deny receiving any notice of cancellation from either the New York Superintendent of Insurance or Worldwide, though LIGA asserts the New York Superintendent of Insurance as rehabilitator of American Fidelity sent the notices to all out-of-state policyholders. The record contains conflicting evidence as to whether Bobo supplied the insurer with her correct address. The application for insurance and the mortgage application to Credithrift filled out by Bobo list her mailing address as Route 1, Box 534D, Hopedale or St. Bernard, Louisiana 70085. At trial Bobo testified that her correct address was Route 2, Box 534D, St. Bernard, Louisiana. She stated that at one time it was Route 1 but then the post office sent cards to residents informing them that they were to use Route 2 instead of Route 1. Bobo further stated that she could not remember whether the change of routes took place before or after she had applied for the insurance. According to Bobo, she never informed E & C of the route change because she did not believe she had to do so. She stated that although there was often confusion with mail delivery in the lower part of St. Bernard Parish, she would have received her mail regardless of whether it was addressed to Route 1 or Route 2 because both routes were on the same road, and all the mail went to the same post office. In any event, we are not satisfied that written notice of cancellation was sent to Bobo at either address.
There is evidence in the record which indicates that the New York Superintendent of Insurance mailed over 15,000 cancellation notices on October 4, 1985. Yet the record contains no evidence, such as a computer print out, which would verify the names and addresses of persons to whom the cancellation notices were sent. Likewise, there is nothing in the record which reflects that a notice of cancellation was *1282 actually mailed to either Bobo or Credithrift. Based on this evidence, we can not conclude that a notice of cancellation was ever mailed to Bobo or Credithrift.
LIGA contends on appeal that Bobo had received actual notice of the cancellation when Cure, the customer service representative from E & C called and informed her that the policy would terminate on October 20, and therefore, written notice was not necessary. We find no merit to this argument. There is discrepancy in the testimony as to when Cure actually contacted Bobo by phone. Cure testified that she contacted Bobo on Wednesday evening October 16 and told her the insurance policy would terminate October 20. She testified that she told Bobo that E & C would loan her the amount refunded from American Fidelity on the premium as part of the down payment for replacement coverage but that Bobo would have to bring $77.18 to their office before October 20 to meet the rest of the downpayment. Bobo testified that Cure called her on Thursday, October 17, told her about the cancellation and stated that E & C had found replacement coverage but that she would have to come up with $210 by Friday, the next day. Richard Clements, an owner of E & C, also testified at trial. According to his testimony, it was difficult to obtain replacement flood coverage for Bobo during hurricane season because she lived outside the protective levee. Considering this testimony, we find that such actual notice, whether given on October 16 or 17, was neither sufficient nor reasonable under the circumstances.
Based on the evidence in the record and absent reasons for judgment from the trial court, we find no error in the trial judge's conclusion that Bobo did not receive adequate notice of the cancellation of the insurance policy issued to her by American Fidelity. Accordingly, the trial court's judgment in favor of Bobo is affirmed.
AFFIRMED.