572 So.2d 99 (1990)
Lewis CRIST, Receiver for Transit Casualty Company
v.
BENTON CASING SERVICE.
No. CA 891070.
Court of Appeal of Louisiana, First Circuit.
October 16, 1990.
Rehearing Denied December 5, 1990.
Writ Denied January 31, 1991.
William C. Rowe, Jr., Baton Rouge, for plaintiff and appellant, Transit Cas. Co.
Jerri Smitki, Houma, for defendant and appellee, Benton Casing Services.
James E. Wright, III, New Orleans, for Alexander & Alexander, Inc.
Before SAVOIE, CRAIN and FOIL, JJ.
FOIL, Judge.
In this appeal, we are asked to decide whether an insured may refuse to pay earned premiums on the basis that an insolvent insurance company placed in receivership breached the insurance contract by failing to defend and honor claims after the date of the declaration of insolvency. We hold that the receiver of the insolvent insurer is entitled to collect premiums earned prior to the date of insolvency from an insured, and reverse the action of the trial court in ruling otherwise.

FACTS
This is an action brought by Lewis Crist, a court-appointed receiver of the defunct Transit Casualty Company, to recover premiums allegedly owed by defendant Benton Casing Service, Inc. In 1983, Transit issued a worker's compensation and a general auto liability policy to Benton Casing, a Louisiana corporation. The policy periods on both policies ran from October 1, 1983, to December 1, 1984.
On December 3, 1985, after the date upon which both policies had expired, Transit was declared insolvent by a Missouri court and placed in receivership. The Missouri court appointed a receiver to marshal Transit's assets, enjoined Transit's officers from disposing of any of its assets and ordered that all Transit policies were to be cancelled at midnight on December 20, 1985.
Subsequently, the receiver conducted an audit of Transit's books. According to the receiver, this audit revealed that Benton Casing owed Transit additional earned premiums in the amount of $144,035.00 for the October 1983December 1984 policy period. Benton Casing refused to pay that amount and this lawsuit followed.
Benton Casing filed a motion for summary judgment in the trial court, arguing it was not liable for the premiums because Transit breached the insurance contract by failing to defend and honor claims in two suits (one filed and one tried and decided after the date of Transit's insolvency), which sought damages for injuries allegedly *100 incurred during the policy period. As a result of these lawsuits, Benton was forced to pay over $60,000.00 in compensation, medical payments and attorney's fees. Additionally contending the very act of becoming insolvent constituted a breach of contract, Benton Casing relied on the general principle of Louisiana contract law which prohibits a party who breaches a contract from thereafter requiring the other party to perform. The trial court agreed with Benton Casing's argument and entered summary judgment, thereby dismissing the receiver's suit. This appeal followed.

DISCUSSION
Benton Casing defends its refusal to pay any additional premiums by relying on several principles of Louisiana general contract law. First is the proposition, well embedded in Louisiana law, which holds that a party who fails to perform its obligations under a contract cannot compel the other party to perform under the contract. Pennington v. Drews, 218 La. 258, 49 So.2d 5 (1949); Carvajal v. Levy, 485 So.2d 586 (La.App. 4th Cir.1986). Secondly, it points to the rule that poverty, or the lack of means with which to perform a contract, is not a legal excuse forgiving performance of a contractual obligation. Barbour v. Barbour, 228 La. 823, 84 So.2d 205 (1955). Benton Casing reurges its position in this appeal that Transit breached the contract of insurance by failing to defend and honor claims after the date of liquidation, and by becoming insolvent, thereby subjecting Benton to liability for the defense and payment of claims which Transit was legally obligated to pay under the policies of insurance. It insists that the receiver stands in the shoes of Transit, and therefore Benton is entitled to assert the breach of contract defense against the receiver, just as if Transit itself was suing, and points to the case of Great Atlantic Insurance Company v. Martin Services International, Inc., 445 So.2d 146 (La.App. 3d Cir.1984). In that case, the court held that where a solvent insurer failed to defend its insured on an indemnity claim, the insurance company breached the contract of insurance, and it therefore could not recover further sums under the contract.
The receiver, on the other hand, relies heavily on a federal case addressing virtually identical facts. In Crist v. Sharp Electric, Inc., 876 F.2d 379 (5th Cir.1989), the U.S. Fifth Circuit Court of Appeals held that Louisiana statutory law regulating insurance insolvency supplanted the general contract law, and concluded that under the statutory scheme, the receiver of the insolvent Transit Casualty Company could recover earned premiums from Transit's insureds.
In Crist, as in this case, the insureds refused to pay claims asserted by Transit's receiver on the ground that Transit's failure to honor and defend claims after the date of insolvency constituted a breach of contract, thereby relieving the insureds of further obligations under the contract. Similarly, the federal district court applied principles of general contract law to dismiss the claim of the receiver. The U.S. Fifth Circuit found Louisiana statutory law provided an "interlocking web" of statutes governing insurer insolvency. In general, we agree with the Crist court's pronouncement and we accept its basic premise that Louisiana general contract law does not control the resolution of the issue in this case.
It is well established that where two statutory provisions are in conflict, the statute that is more specific must prevail as an exception to the general statute. Smith v. Cajun Insulation, Inc., 392 So.2d 398, 402 (La.1980). A review of the insurance code unveils a number of provisions directed at insurance company insolvency. La.R.S. 22:733 through La.R.S. 22:756.2 govern the rehabilitation or liquidation of a domestic insurer. As this court recently stated, Louisiana's scheme for liquidating insolvent domestic insurers is very similar to proceedings in bankruptcy. LeBlanc v. Bernard, 554 So.2d 1378 (La.App. 1st Cir. 1989), writ denied, 559 So.2d 1357 (La. 1990). In LeBlanc v. Bernard, 554 So.2d at 1382, we analyzed the regulatory scheme thusly:

*101 The Commissioner's function as rehabilitator or liquidator requires, initially, a determination of the assets and liabilities of the insurer. See LSA-R.S. 22:750 (requiring a report to the court reflecting assets and liabilities within a specified time period). The Commissioner's title to property in this capacity is in the nature of a fiduciary holding those assets for the benefit of parties in varied legal relationship to the insurer. See Couch, 2A Couch Cyclopedia of Insurance § 22:45 (Anderson 2d ed. 1984). The Commissioner is authorized, subject to court approval, to borrow funds against the assets. LSA-R.S. 22:740 (allowing the securing of repayment by `mortgage, pledge, assignment, transfer in trust or hypothecation' ...). The scheme for liquidation provides that the rights and liabilities of the insurer and its creditors (excepting contingent claims) are fixed upon the entry of the liquidation order. LSA-R.S. 22:738. Thereafter, a time period is set within which claims must be presented. LSA-R.S. 22:748. The priority of claims, including claims by employees for compensation, claims evidenced by written instruments, contingent claims, and secured claims, is set forth by statute. LSA-R.S. 22:746 and 749. The scheme, similar to proceedings in bankruptcy, contemplates the conversion of non-liquid assets into liquid ones, and empowers the Commissioner to void transfers or encumbrances on these assets which frustrate this purpose. LSA-R.S. 22:745 (providing for voiding transfers or liens made within four months of the petition to show cause if a preference to a creditor or policyholder is granted thereby). The marshalling of assets and prioritizing of claims pursuant to this scheme is the exercise of the police power of the State of Louisiana. See Morris v. Jones, 329 U.S. 545, 67 S.Ct. 451, 457, 91 L.Ed. 488 (1947).
An integral part of the scheme is distribution of the funds within a reasonable time period, the general rule being that policyholders and general creditors share ratably, and that in the absence of some statutory preference, no preference exists. Couch, supra, 22:79 and 84. LSA-R.S. 22:749(E) recognizes a preference insofar as secured creditors are secured to the extent of their security and become general creditors insofar as the balance (if there remains one).
Significantly, La.R.S. 22:738 provides that the rights and liabilities of the insurer and its creditors are fixed as of the date of the entry of the order directing liquidation. La.R.S. 22:737.1 deals with the effect of liquidation on premiums owed to the insurer. This provision states, in pertinent part:
§ 737.1. Premiums due; effect of injunction, or order of rehabilitation or liquidation
A. If an insurer is enjoined from transacting any insurance business or from disposing of its property under R.S. 22:734 or issued an order directing rehabilitation or liquidation under R.S. 22:735, any premium due or payable on a contract of insurance which was issued by the insurer shall be paid by the insured as provided in this Section.
B. When an insurer is enjoined from transacting insurance business or from disposing of its property under R.S. 22:734, any and all premiums due the insurer shall be paid to the commissioner of insurance until dissolution or modification of the injunction.
C. When an order directing rehabilitation is issued under R.S. 22:735, any and all premiums due the insurer shall be paid to the commissioner of insurance until termination, under the provisions of R.S. 22:735, of the order directing rehabilitation.
D. All contracts of insurance issued by the insurer are cancelled upon issuance of an order, under the provisions of R.S. 22:735, directing liquidation, and no premium shall be due or payable to the insurer. Such contracts formerly issued by the insurer may be assumed in whole or in part, or upon a modified basis, by a solvent insurer or insurers if approved under the provisions of R.S. 22:737(D).
This provision recognizes that an insured may continue to be liable for insurance *102 premiums up until the date of the order of liquidation, even though technically the insurer can no longer perform its obligations under the contract of insurance. It has the effect of cancelling all policies as of the date of the order directing liquidation, after which date, premiums are no longer owed by the insured.
Additionally, Louisiana has enacted the Uniform Insurers Liquidation Law, La.R.S. 22:757 et seq., which governs liquidation proceedings in member states. The Act provides a uniform, orderly and equitable scheme for making and processing claims against insolvent insurers and its purpose is to provide a fair procedure to distribute the assets of the insolvent insurer. Dardar v. Insurance Guaranty Association, 556 So.2d 272 (La.App. 1st Cir.1990); Bobo v. American Fidelity Fire Insurance Company, 550 So.2d 1278 (La.App. 4th Cir. 1989). La.R.S. 22:763 mandates that the Act be interpreted and construed so as to effectuate its general purpose to make uniform the law of the states that enact it. Missouri is a member state under the Uniform Act.
Additionally, La.R.S. 22:1183 governs the liability of an insured or agent to whom a policy was issued against a claim by an insolvent insurer. This provision states:
§ 1183. Insolvent insurer; disposition of premiums
A. Any claim of an insolvent insurer against an insured or against the agent through whom a policy was written, concerning any policy of insurance issued or delivered in this state shall be subject to the following limitations:
(1) The insured shall not be liable to an insolvent insurer for any premium which had not been earned on a pro rata basis on the date the insurer was declared insolvent. The insured shall be entitled to credit against any obligation owed to the insolvent insurer for any unearned premium which the insured has paid and for which he has not been reimbursed by the Louisiana Guaranty Insurance Association.
* * * * * *
B. In this Section, the term `insolvent insurer' includes any insurer who has been declared to be insolvent under the laws of any state and its liquidator, receiver, statutory successor, or other legal representative.
As the court in Crist correctly noted, whether an insured is liable for any premium to an insolvent insurer depends on whether the premium was earned on the date the insurer was declared insolvent. Thus, if the premium was not earned on the date of insolvency, the insured is not liable for the premium, and is entitled to a credit against any obligation owed to the insolvent insurer for any unearned premium the insured has paid. Conversely, the insured is liable for earned premiums prior to the date of the declaration of insolvency. This provision supplants general contract law, as it governs the liability of an insured to an insolvent insurer for earned premiums.
We find that Louisiana has enacted a statutory scheme specifically aimed at insurance insolvency, and it overrides the general contract law to the extent that the general contract law is inconsistent with the provisions of that scheme, or the purposes behind it. Under Louisiana statutory law, an insured is liable to an insolvent insurer for premiums earned prior to the date of the declaration of insolvency. La. R.S. 22:737.1; La.R.S. 22:1183.
Additionally, for this court to hold that an insured could refuse to pay earned premiums to an insolvent insurer, where the insurer is legally enjoined because of the insolvency from honoring its contract with the insured, would contravene the purposes behind the liquidation proceedings. The receiver is charged with marshalling the assets of the insurance company. The entire liquidation scheme is designed to achieve an equitable distribution of the defunct insurance company's assets among all of its insureds. We agree with the receiver's position that to allow Benton Casing to withhold earned premiums from the receivership is tantamount to granting a preference to Benton vis-a-vis all of Transit's insureds/creditors with similiar claims. *103 Although Benton Casing was forced to pay out of its own pocket claims Transit would have paid but for the insolvency, it must stand in line with all of the other creditors of Transit to receive its pro rata share of the assets of the defunct company. This result is mandated by the liquidation scheme.
Accordingly, we hold that an insured is liable to the receiver of an insolvent insurance company for premiums earned prior to the date of insolvency. Our review of the record in this case reveals that there is a dispute over whether Benton Casing does in fact owe additional premiums to Transit. The parties dispute whether Benton Casing entered into a contract with Transit for a guaranteed flat rate premium, not subject to audit, or whether the premium for the policy period in question was adjustable. This issue must be resolved by the trial court after a full presentation of the facts, and we therefore remand this case to the trial court to rule on this issue.
Based on the foregoing, the action of the trial court in dismissing plaintiff's case is reversed. The case is remanded for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
CRAIN, J., concurs and assigns reasons.
CRAIN, Judge, concurring.
It should be pointed out that the Louisiana Insurance Guaranty Association (LIGA) becomes part of the legislative scheme determining the rights of insolvent insurers, their insured, and claimants against them. La.R.S. 22:1382 provides that,
(1) The Association shall:
(a) be obligated to the extent of the covered claims existing prior to the determination of the insurance insolvency... [T]he Association shall pay the full amount of any covered claim arising out of a workman's compensation policy ...
(b) be deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent.
Consequently, the insured here is not without recourse for claims made against it that were covered but unpaid by Transit because of insolvency.